1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   COMMITTEE TO PROTECT OUR                    No.  1:15-cv-01323-DAD-JLT
     AGRICULTURAL WATER, et al.,
12
                Plaintiffs,
13                                               ORDER GRANTING DEFENDANTS'
          v.                                     MOTIONS TO DISMISS
14
     OCCIDENTAL OIL AND GAS                       (Doc. Nos. 51, 55, 57, 59, 63, 64)
15   CORPORATION, et al,

16              Defendants.

17

18          This matter came before the court on June 22, 2016, for hearing of defendants' motions to

19   dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. Nos.

20   51, 55, 57, 59, 63, 64.)  Attorneys Patricia K. Oliver, R. Rex Parris, and Jennifer F. Novak

21   appeared on behalf of plaintiffs Committee to Protect our Agricultural Water, Mike Hopkins, and

22   John Wedel.  Attorneys Matthew T. Kline and Dimitri D. Portnoi appeared on behalf of defendant

23   Occidental Oil and Gas Corporation, and the California Resources Corporation.  Attorney

24   Christopher R. Rodriguez appeared on behalf of defendant Western States Petroleum Association.

25   Attorneys William E. Thompson and Zach Hughes appeared on behalf of defendant Chevron

26   U.S.A., Inc.  Attorney Keli N. Osaki appeared on behalf of defendant California Independent

27   Petroleum Association.  Deputy Attorney General Kenneth G. Lake appeared on behalf of

28   defendant California Division of Oil, Gas, and Geothermal Resources, Governor Edmund G.

                                                1

1   Brown, Timothy R. Kustic, and Mark Nechodom.  Attorneys Joel M. Athey, Kristina Azlin, and

2   Kern County Counsel Theresa A. Goldner appeared on behalf of defendant Lorelei H. Oviatt.

3   Following oral argument, defendants' various motions were taken under submission.

4       The task of addressing six separate motions to dismiss and all of the arguments raised in

5   support of and in opposition to those motions has proven to be somewhat cumbersome.  In the

6   end, the court has concluded that the allegations of the operative complaint are deficient with

7   respect to each of the claims presented.  In addition, the court has concluded that some of those

8   deficiencies cannot be cured.  For the reasons explained more fully below, the court will grant

9   defendants' motions to dismiss.

10                       FACTUAL BACKGROUND

11       On August 31, 2015 plaintiffs Committee to Protect our Agricultural Water, Mike

12   Hopkins, and John Wedel, commenced this action in the United States District Court for the

13   Central District of California.  (Doc. No. 1.)  On August 31, 2015, the case was transferred to the

14   Eastern District of California pursuant to 28 U.S.C. 1404(a).  (Doc. No. 95.)

15       This action now proceeds before the court on plaintiffs' First Amended Complaint

16   ("FAC"), filed June 16, 2015.  (Doc. No. 16.)  In the FAC, plaintiffs bring claims against various

17   defendants, including California Governor Edmund G. Brown; three California state officials, the

18   former State Oil & Gas Supervisor ("Supervisor") for the Division of Oil, Gas, and Geothermal

19   Resources ("DOGGR") Timothy Kustic, Director of the California Department of Conservation

20   ("CDC") Mark Nechodom, and Kern County official Lorelei Oviatt; three oil companies,

21   Occidental Oil and Gas Corporation ("Occidental"), California Resources Corporation ("CRC"),

22   and Chevron U.S.A., Inc. ("Chevron"); and two trade associations, the Western States Petroleum

23   Association ("WSPA") and California Independent Petroleum Association ("CIPA").

24       The FAC alleges in relevant part as follows.  Oil development in California is subject to

25   both federal and state regulation.  The federal Safe Drinking Water Act of 1974 ("SDWA")

26   provides rules for protection of public drinking water supplies.  (*Id.* at 4); *see also* 42 U.S.C.

27   §§ 300(f) *et seq.*  Under the SDWA, the Environmental Protection Agency ("EPA") is authorized

28   to regulate underground injection of fluid through wells, and to oversee states implementing these

1  federal standards.  (Doc. No. 16 at 25); *see also* 42 U.S.C. §§ 300(h), *et seq.*  The EPA has

2  specifically approved California's underground injection control program.  (Doc. No. 16 at 25);

3  *see also* 40 C.F.R. § 147.250.  Pursuant to California's program, companies must obtain permits

4  when they seek to use water disposal injection wells, known as Class II wells, to stimulate oil

5  production.  (Doc. No. 16 at 25.); *see also* Cal. Pub. Res. Code §§ 3000 *et seq.*  The CDC's

6  DOGGR is charged with granting such permits.  *Id.*[1]

7        In 2008, California oil companies began to increase their use of Class II wells in

8  California.  (*Id.*)  Around 2010, oil and gas companies began to require more well-drilling permits

9  than were previously needed.  (*Id.*)  In response to the increased need, the oil and gas companies

10  began contacting government officials in an attempt to streamline the process for DOGGR

11  issuance of well-drilling permits.  (*Id.*)

12        Plaintiffs allege that as early as September 27, 2011, defendants formed an "enterprise" to

13  illegally increase oil production and maximize profits and tax revenue by allowing oil companies

14  to inject salt water into fresh water in violation of the SDWA.  (*Id.*)  According to plaintiffs, this

15  violated 18 U.S.C. §§ 241, 1341, 1343, 1346.43, 1512(b), and 1513(b), and thus, constitutes

16  racketeering activity.  (*Id.*)

17        The FAC asserts the following claims against all defendants: (i) claims under the

18  Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d); and

19  (ii) civil rights claims under 42 U.S.C. § 1983 and § 1985(3).  (*Id.* at 48, 51.)  Plaintiffs seek

20  injunctive relief and monetary damages.  (*Id.* at 53–54.)

21        On August 10, 2015, defendants Occidental, CIPA, Chevron, WSPA, and Oviatt filed

22  individual motions to dismiss, (Doc. Nos. 51, 55, 57, 59, 63), and defendants Governor Brown,

23  DOGGR, Kustic, and Nechodom ("state defendants") filed a joint motion to dismiss, (Doc. No.

24  64).  On August 20, 2015 plaintiffs filed opposition papers to defendants' motions to dismiss.

25  /////

26

27  ---
[1] Under California Resources Code § 3013, "the [CDC] director and the [DOGGR] supervisor,
acting with the approval of the [CDC] director, shall have all powers, including the authority to
28  adopt rules and regulations, which may be necessary to carry out the purposes of this division."

1 (Doc. Nos. 71, 73–77.)  Defendants filed their replies on August 27, 2015.  (Doc. Nos. 81, 83, 85,

2 88, 90, 91.)

3 <u>LEGAL STANDARDS</u>

4 The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

5 sufficiency of the complaint.  *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1182 (9th Cir.

6 2013).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

7 sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

8 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the

9 claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a)

10 does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state

11 a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

12 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the

13 pleaded factual content allows the court to draw the reasonable inference that the defendant is

14 liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

15 In determining whether a complaint states a claim on which relief may be granted, the

16 court accepts as true the allegations in the complaint and construes the allegations in the light

17 most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Novak v.*

18 *United States*, 795 F.3d 1012, 1017 (9th Cir. 2015).  It is inappropriate to assume that the plaintiff

19 "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways

20 that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

21 *Carpenters*, 459 U.S. 519, 526 (1983).

22 <u>ANALYSIS</u>

23 In their various motions to dismiss, defendants collectively advance eight arguments:

24 (i) plaintiffs' claims are entirely barred by the *Noerr-Pennington* doctrine; (ii) plaintiffs' claims

25 are barred by the Eleventh Amendment; (iii) plaintiffs' claims are barred by absolute immunity;

26 (iv) plaintiffs' claims are barred by qualified immunity; (v) plaintiffs fail to state a cognizable

27 RICO claim, as they lack standing and have not met federal pleading standards; (vi) plaintiffs fail

28 to adequately plead claims under 42 U.S.C. § 1983 or § 1985(3); (vii) plaintiffs Hopkins and

1    Wedel have failed to join necessary parties under Federal Rule of Civil Procedure 12(b)(7); and

2    (viii) plaintiffs Hopkins' claims are barred by the applicable statute of limitations.  Additionally,

3    both plaintiffs and defendants Occidental and CRC, Oviatt, Chevron, and WSPA request that the

4    court take judicial notice of several documents and other items.  (Doc. Nos. 53, 58, 61, 63-2, 72.)

5         Below, the court will first address the parties' requests for judicial notice, and, thereafter,

6    will turn to the arguments advanced by each of the defendants in support of their motions to

7    dismiss.

8         **I.     Judicial Notice**

9         When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is

10   permitted to consider material which is properly submitted as part of the complaint, documents

11   that are not physically attached to the complaint if their authenticity is not contested and the

12   plaintiffs' complaint necessarily relies on them, and matters of public record.  *Lee v. City of Los*

13   *Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *Hal Roach Studios v. Richard Feiner & Co.*, 896

14   F.2d 1542, 1555 n.19 (9th Cir. 1990)(documents attached to the complaint are considered a part

15   thereof and may be addressed in resolving a motion to dismiss); *see also Johnson v. Federal*

16   *Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (materials referred to in the

17   complaint, but not attached thereto, may be considered on a motion to dismiss, if no one questions

18   their authenticity); *MGIC Indem. Corp. v. Weisman*, 803 F. 2d 500, 504 (9th Cir. 1986) (judicially

19   noticeable materials should be considered by the court in resolving a motion to dismiss).

20   However, a court may not take judicial notice of a fact that is "subject to reasonable dispute."

21   Fed. R. Evid. 201(b); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

22        **a.     State Court Documents and Corporate Filings**

23        Defendants Occidental, CRC, and Chevron, request that the court judicially notice the

24   following three documents: the original and First Amended Complaints filed in *Palla Farms v.*

25   *Crimson Resource Management Corp., et al.*, Case No. S-1500-CV-283013-DRL; a corporate

26   filing for Monache Meadows Farming Co., LLC; and a corporate filing for Palla Farms, LLC.

27   (Doc. Nos. 53 at 2–3; 61 at 4.)  The latter two documents are on file with the California Secretary

28   of State.  (*Id.*)

The court grants the request for judicial notice of the *Palla Farms* complaints, but only for purposes of noticing the existence of the lawsuit and the claims presented therein.  *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *Lexington Ins. Co. v. Energetic Lath & Plaster, Inc.*, No. 2:15-cv-00861-KJM-EFB, 2015 WL 5436784, at *3 (E.D. Cal. Sept. 15, 2015); *see also Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (explaining that courts may take judicial notice of "documents on file in federal or state courts"); *see generally* Fed. R. Evid. 201 (governing judicial notice of adjudicative facts).  The court also grants the request for judicial notice of the corporate filings, which are "matters of public record outside the pleadings."  *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

### b.   Kern County Planning Department Documents

Defendant Oviatt requests that the court take judicial notice of the following documents: minutes from the Kern County Board of Supervisors meetings held on November 6, 2012, November 13, 2012, December 11, 2012, and January 22, 2013; letters from defendant Oviatt to the Kern County Board of Supervisors, dated January 22, 2013, April 30, 2013, and June 4, 2013; documents related to Oil & Gas Zoning Ordinance Amendments, including a Notice of Decision from August 30, 2013, a presentation to the Kern County Board of Supervisors from September 16, 2013, and an Executive Summary from July 2015; a Kern County Staff Report on revisions to Kern County Zoning Ordinance 2015 C, from July 27, 2015; and a Kern County public meeting schedule from August 9, 2015.  (Doc. No. 58 at 2–5.)

Because these documents are publicly available official records of the Kern County Planning Department, they constitute "matters of public record" which may be judicially noticed. *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.l (9th Cir. 1995).  Accordingly, the court grants these requests for judicial notice.

/////

### c.  <u>Publications from the DOGGR and CEPA, and the Office of Governor Brown</u>

Defendant Chevron requests that the court take judicial notice of the following documents: the "Proposed Text of the Aquifer Exemption Compliance Schedule Regulations" prepared by the DOGGR, dated May 29, 2015; a letter from DOGGR Supervisor Steve Bohlen from February 6, 2015; a memorandum from the California Environmental Protection Agency, dated March 2, 2015; and a press release from the Office of Governor Brown, dated January 13, 2012.  (Doc. No. 61 at 2–3.)  Again, because these documents are matters of public record, having been prepared and made public by official government agencies, the court grants defendant Chevron's requests for judicial notice.  *See United States v. 14.02 Acres of Land More or Less*, 547 F.3d 943, 955 (9th Cir. 2008).  Defendant Chevron further requests that the court take judicial notice of a video from the Office of Governor Brown, dated January 13, 2012, referenced by plaintiffs in their FAC.  (Doc. No. 61 at 4–5.)  The court grants this request.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (noting that courts may consider evidence on which the "complaint necessarily relies if: (i) the complaint refers to the document; (ii) the document is central to the plaintiffs' claim; and (iii) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

### d.  <u>California Secretary of State Documents</u>

Defendant WSPA requests that the court take judicial notice of a report concerning lobbying activity for WSPA between July 1, 2013, and September 30, 2013, published on the California Secretary of State website.  (Doc. No. 63-2 at 2.)  As this report is a matter of public record maintained by a governmental agency, the court grants WSPA's request for judicial notice. *See United States v. 14.02 Acres of Land More or Less*, 547 F.3d 943, 955 (9th Cir. 2008).

### e.  <u>Plaintiffs' Requests for Judicial Notice & Submission of Chernow Declaration</u>

Plaintiffs request that the court judicially notice one hundred and fifteen items, comprising over seven hundred pages of factual statements, images, letters, emails, and newspaper articles. (Doc. No. 72.)  Plaintiffs do not offer specific arguments supporting judicial notice of each item, but instead argue in conclusory fashion that the documents "are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably

7

1    indisputable accuracy."  (*Id.* at 2.)  Additionally, plaintiffs have lodged a declaration of CDC

2    official Derek Chernow in support of their opposition to defendants Occidental and CRC's

3    motion to dismiss.  (Doc. No. 78.)

4          Defendants Occidental, CRC, and Oviatt oppose plaintiffs' requests for judicial notice,

5    and request that the court strike both plaintiffs' request for judicial notice and the Chernow

6    declaration.  (Doc. Nos. 82, 84, 92.)  With respect to plaintiffs' requests for judicial notice,

7    defendants argue that plaintiffs have not met their burden of showing that the items of which they

8    seek judicial notice are not reasonably subject to dispute.  (Doc. No. 82 at 3.)  Specifically,

9    defendants argue that "plaintiffs do not authenticate the documents, identify which document falls

10   into which category, or provide any authority for the proposition that any documents obtained

11   pursuant to a public records request is automatically noticeable."  (Doc. No. 84 at 2.)  With

12   respect to the Chernow declaration, defendants argue that it is improper in the context of a motion

13   to dismiss under Federal Civil Procedure Rule 12(b)(6), and that it lacks foundation and contains

14   inadmissible hearsay.  (*Id.* at 3.)

15         The court agrees with defendants in large part.  While the court may take judicial notice of

16   matters of public record under Federal Evidence Rule 201, it may not take judicial notice of

17   contested facts.  *See Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458–59 (9th Cir. 1995); *NLRB v.*

18   *Big Bear Supermakets #3*, 640 F.2d 924, 926 n.1 (9th Cir. 1980) (declining to take judicial notice

19   of letters because the defendant "has failed to establish that the information in the letters is not

20   subject to reasonable dispute"); *cf. In re American Apparel, Inc. Shareholder Litig.*, 855 F. Supp.

21   2d 1043, 1062 (C.D. Cal. Jan. 13, 2012) ("Courts in the Ninth Circuit routinely take judicial

22   notice of press releases," and listing cases).  Here, plaintiffs have made no showing as to why the

23   court may take notice of the documents and items which are the subject of their request under

24   Federal Evidence Rule 201.  It is not incumbent upon the court to sort through the voluminous list

25   of exhibits to determine whether any of the contents are appropriate subjects for judicial notice.[2]

26

---

27   [2] "Judges are not like pigs, hunting for truffles buried in briefs."  *Christian Legal Soc. Chapter of*
     *University of California v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) (quoting *United States v.*
28   *Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

1   *See Harris v. County of Orange*, 682 F.3d 1126, 1131–1132 (9th Cir. 2011); *see also Broam v.*

2   *Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6)

3   dismissal, a court may not look beyond the complaint to a plaintiff's moving papers") (quoting

4   *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).  Accordingly, the

5   court denies plaintiffs' requests for judicial notice.

6          However, because the court has found it unnecessary to examine the Chernow declaration

7   in analyzing the defendants' motions to dismiss plaintiffs' complaint, the court will deny

8   defendants' motion to strike that declaration as moot.  *See ForestKeeper v. Benson*, No. 1:14-cv-

9   00341-LJO-SKO, 2014 WL 4193840, at *9 (E.D. Cal. Aug. 22, 2014) (denying a motion to strike

10  as moot because "the Court did not rely on the contested information when coming to its decision

11  regarding Defendant's Motion to Dismiss"); *see also Doe v. Presiding Bishop of Church of Jesus*

12  *Christ of Latter-Day Saints*, 837 F. Supp. 2d 1145, 1157 (D. Idaho 2011) (denying a motion to

13  strike as moot because "in reaching its decision in this case, the Court has not found it necessary

14  to consider the extrinsic materials provided by [plaintiff]").

15      **II.       The *Noerr-Pennington* Doctrine**

16          Defendants first argue that the FAC should be dismissed because plaintiffs' claims are

17  barred by the First Amendment's *Noerr-Pennington* doctrine.

18          The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of the

19  "right of the people . . . to petition the Government for a redress of grievances."  U.S. Const.

20  amend. I; *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *Eastern R.R. Presidents*

21  *Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136–37 (1961); *Nunag-Tanedo v. East*

22  *Baton Rouge Parish School Board*, 711 F.3d 1136, 1138–39 (9th Cir. 2013).  Under this doctrine,

23  those who petition any department of the government for redress are generally immune from

24  statutory liability for their petitioning conduct, or for conduct that is "incidental" to valid

25  petitioning conduct.  *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929–30 (9th Cir. 2006); *see also Allied*

26  *Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n.4 (1988) (observing that the

27  *Noerr-Pennington* doctrine immunizes conduct "if it is 'incidental' to a valid effort to influence

28  government action"); *Nunag-Tanedo*, 711 F.3d at 1139.  Though it initially emerged in the

1    antitrust context, the Supreme Court has held that the doctrine also applies in other, indeed all,

2    statutory contexts as well.  *Nunag-Tanedo*, 711 F.3d at 1139; *Kearney v. Foley & Lardner, LLP*,

3    590 F.3d 638, 643 (9th Cir. 2009) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S.

4    508, 510–11 (1972)).  In particular, the *Noerr-Pennington* doctrine has been found to apply to

5    RICO and 42 U.S.C. § 1983 claims.  *See Sosa*, 437 F.3d at 930–32 & n.6; *Boulware v. State of*

6    *Nev., Dept. of Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992); *see also Lynn v. Friedenthal*, No.

7    CV 09-08717-PSG (VBK), 2011 WL 6960823, at *7 (C.D. Cal. Dec. 2, 2011) (stating that *Noerr-*

8    *Pennington* immunity "applies no matter how a plaintiff chooses to characterize a purported cause

9    of action").  Moreover, *Noerr-Pennington* applies to conduct by both private and government

10   actors.  *Manistee Town. Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000); *see also*

11   *Kearney,* 590 F.3d at 644.

12        Immunity under *Noerr-Pennington* is not absolute, however.  In particular, immunity is

13   withheld when the petitioning is a "sham."  *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056,

14   1060 (9th Cir. 1998).  Sham petitioning is "private action that is not genuinely aimed at procuring

15   favorable government action."  *Kottle*, 146 F.3d at 1060; *see also Allied Tube & Conduit Corp.*,

16   486 U.S. at 500 n.4.  The sham exception applies when a defendant uses government processes,

17   as opposed to the outcome of those processes, as a mechanism to injure plaintiffs.  *Empress LLC*

18   *v. City and County of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005); *see also Ad Visor, Inc.*

19   *v. Pacific Tel. and Tel. Co.*, 640 F.2d 1107, 1109 (9th Cir. 1981) ("The cases following Noerr and

20   Pennington show the 'sham' exception to be a test of whether the efforts to obtain judicial or

21   legislative action can be characterized as an abuse of process.").

22        The scope of the *Noerr-Pennington* sham exception depends on the branch of government

23   involved.  *Kottle*, 146 F.3d at 1061.  If the relevant petitioning activity involves the legislature,

24   "the sham exception is extraordinarily narrow."  *See Kottle*, 146 F.3d at 1061; *see also* I. Phillip

25   E. Areeda & Herbert Hovenkamp, Antitrust Law, 262 at ¶ 204 (2013) (noting that, in the context

26   of legislative petitioning, "it is virtually impossible to identify the sham"); *cf.* Stuart N. Senator,

27   *Noerr-Pennington*: Safeguarding the First Amendment Right to Petition the Government, 23 J.

28   Antitrust & Unfair Competition L. Sec. St. B. Cal. 83, 89 (2014) (observing that, "in the context

of legislative petitioning, no circuit court appears to have expressly applied such an exception or explained what exactly it would be"). In the legislative context, the sham exception has been found to apply if actors use the legislative process "with no expectation of obtaining legitimate government action." *Southern Union Co. v. Southwest Gas Corp.*, 165 F. Supp. 2d 1010, 1042 (D. Ariz. 2001); *see also Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1307 (Fed. Cir. 1999). Misrepresentations made during otherwise protected petitioning conduct and aimed at the legislature do not amount to sham petitioning. *See Liberty Lake Inv., Inc. v. Magnuson*, 12 F.3d 155, 158 (9th Cir. 1993); *Boone v. Redevelopment Agency*, 841 F.2d 886, 896 (9th Cir. 1988); *see also Allied Tube & Conduit Corp.*, 486 U.S. at 499–500 (stating that conduct seeking legislative action enjoys *Noerr-Pennington* immunity "even when [it] employs unethical and deceptive methods"); *Kottle*, 146 F.3d at 1061 (noting that "[m]isrepresentations are a fact of life in politics," and "lobbying is the sine qua non of democracy").

If the relevant petitioning activity involves judicial processes, the sham exception is broader. In judicial settings, misrepresentations to adjudicatory bodies do invoke the sham exception to *Noerr-Pennington*. *See Allied Tube & Conduit Corp.*, 486 U.S. at 499–500 (observing that "in less political arenas, unethical and deceptive practices can constitute abuses of . . . judicial processes"); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972) (finding that illegal or fraudulent lobbying activities normally immunized by *Noerr–Pennington* are not immunized if they occur in a judicial or quasi-judicial setting); *Kottle*, 146 F.3d at 1061.

Finally, if the petitioning involves an executive agency, the scope of the sham exception depends on whether the executive entity more resembles a judicial body or a political entity. *See Forro Precision, Inc. v. International Bus. Machines Corp.*, 673 F.2d 1045, 1060 n.10 (9th Cir. 1982); *see also Kottle*, 146 F.3d at 1061. "An administrative process is deemed 'political' or 'adjudicatory' for purposes of the 'sham' exception by considering the totality of the circumstances on a case-by-case basis." *Marina Point Dev. Assoc. v. United States*, 364 F. Supp. 2d 1144, 1147 (C.D. Cal. 2005) (citing *Kottle*, 146 F.3d at 1061). The critical inquiry is whether the agency has discretion and independence, characteristic of a political process, or whether it

must instead follow rules and other enforceable standards subject to review, as is the case with an adjudicatory process.  *See Kottle*, 146 F.3d at 1061; *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076 (9th Cir. 1976) (rejecting the judicial sham exception with respect to proceedings before the San Francisco Board of Permit Appeals, after concluding that the Board was essentially a political body); *see also Mercatus Grp. LLC v. Lake Forest Hosp.*, 641 F.3d 834, 846 (7th Cir. 2011) (articulating standards for distinguishing between legislative and adjudicatory, including whether the entity has legislative power, whether the actions were matters of discretionary authority or were guided by definite standards susceptible to judicial review, the formality of the fact-finding processes, whether testimony was taken under oath, whether the fact-finding process is subject to political influences, and whether the proceedings involve ex parte communications).

In their motions to dismiss, defendants each argue that plaintiffs' claims are entirely barred by the *Noerr-Pennington* doctrine, because those claims seek to attach liability to petitioning conduct protected under the First Amendment.  (Doc. Nos. 51 at 18–23; 55 at 20; 57 at 24; 59-1 at 17; 63-1 at 8; 64-1 at 17–19.)

Plaintiffs contest the defendants' arguments in this regard.  (Doc. Nos. 71, 73, 74, 75, 76, 77.)  While plaintiffs do not deny that their claims are based on defendants' petitioning activities, they argue that the sham exception applies here.  (Doc. No. 71 at 14.)  However, plaintiffs do not clearly explain the scope of the sham exception they seek this court to apply.  (*Id.* at 16 n.3.)

In reply, defendants argue that the sham exception is inapplicable in this case.  (Doc. No. 90 at 26–28.)  They contend that their actions all occurred in a legislative rather than a judicial context, and that any alleged misrepresentations made by the defendants cannot constitute sham petitioning.  (*Id.*)  Even if the relevant conduct occurred in a judicial arena, defendants argue, plaintiffs have not alleged in their FAC any specific instances of misrepresentation sufficient to indicate sham petitioning.  (*Id.* at 28.)

Defendants' arguments are persuasive with respect to defendants Occidental, Chevron, CIPA, and WSPA.  The court first concludes that the defendants' acts as alleged in the FAC constitute protected petitioning activity.  In their FAC, plaintiffs bring claims against defendants

Occidental, Chevron, CIPA, and WSPA based the following conduct: (i) "closed-door" gatherings between defendants and DOGGR officials in 2012 and 2013, (Doc. No. 16 at 30, 38–39, ¶¶ 139, 189–196); (ii) threats by CIPA and WSPA to file suit against the DOGGR based on well-drilling permit policies, (*Id.* at 27, ¶¶ 124–125); (iii) political contributions by oil company defendants to defendant Governor Brown, (*Id.* at 33, ¶¶ 154–155, 198); (iv) marketing and public relations campaigns by Occidental, Chevron, CIPA, and WSPA, (*Id.* at 42–43, ¶¶ 209–210); and (v) letter-writing campaigns by WSPA and CIPA to defendant Governor Brown, (*Id.* at 27–28, ¶¶ 127, 131).  All such alleged conduct falls within the scope of protected petitioning.  *See Boone*, 841 F.2d at 894 (discussing meetings between private individuals and government officials, and honoraria or campaign contributions to public officials); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 937 (9th Cir. 2006) (discussing litigation-related activities preliminary to the formal filing of a lawsuit, including communications voicing an intent to file suit); *Manistee Town Ctr.*, 227 F.3d at 1090 (discussing marketing and public relations campaigns targeting the general public and seeking government action); *White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) (discussing letter-writing campaigns to government officials).  Indeed, in their opposition to the pending motion plaintiffs do not deny that their claims are based on petitioning activity, arguing only that defendants' conduct involves sham petitioning.  (Doc. No. 71.)  Accordingly, the court concludes that the conduct of defendants Occidental, Chevron, CIPA, and WSPA as alleged in the FAC represents constitutionally protected petitioning within the ambit of *Noerr-Pennington*.

Furthermore, the sham exception does not apply to the alleged conduct by defendants Occidental, Chevron, CIPA, and the WSPA.  As noted above, the scope of the sham exception hinges on the type of petitioning conduct at issue.  Since the relevant petitioning activity here involves an executive agency, the DOGGR, the scope of the exception depends on whether the DOGGR more closely resembles a judicial body or a legislative entity.  *See Kottle*, 146 F.3d at 1061.  The crucial question is thus whether the DOGGR operates with discretion and independence, characteristic of a political process, or whether it must instead follow formal rules and other enforceable standards subject to review, like an adjudicatory process.  *Id.*

/////

1       According to the allegations of the FAC, the DOGGR is the executive agency charged

2  with enforcing the SDWA in California and issuing permits to companies seeking to use Class II

3  wells to stimulate oil production.  (Doc. No. 16 at 21–22, ¶¶ 95, 100.)  At oral argument on the

4  pending motions, plaintiffs described the permit-issuing process as "essentially ministerial,"

5  indicating that applicants must fulfill a "checklist" of requirements before being granted permits,

6  with such permits automatically granted after ten days, absent any DOGGR action.  (Doc. No.

7  165 at 8–9.)  Plaintiffs have not indicated, either in their FAC or at oral argument, that the permit-

8  issuing process features any recognizable hallmarks of adjudication—that it was guided by

9  definite standards, involved a formal fact-finding procedure, incorporated proceedings with

10  testimony taken under oath, or produced reviewable decisions.  In the absence of any indications

11  to the contrary, the court therefore concludes that the process for issuing well-drilling permits is

12  more akin to a political process than a judicial one.  *Cf. Mercatus*, 641 F.3d at 847–48 (finding

13  that proceedings related to a proposed physician center before a village board were "legislative,"

14  because the decisions were "not guided by enforceable, definite standards subject to review," and

15  "[n]one of the evidence the Board considered was subject to strict rules of admissibility or any

16  recognizable evidentiary rules"); *U.S. Futures Exch. LLC v. Bd. of Trade of City of Chi.*, No. 04 C

17  6756, 2012 WL 3155150, at *3–4 (N.D. Ill. Aug. 3, 2012) (finding that proceedings before the

18  U.S. Commodity Futures Trading Commission for approval to launch exchanges was legislative,

19  as the fact-finding process was informal, evidence was not taken on the record, no rules of

20  evidence were applied, testimony was not given under oath, and the proceedings were subject to

21  lobbying and other ex parte influences).  Plaintiffs have also failed to plead facts in the FAC

22  suggesting that defendants Occidental, Chevron, CIPA, and WSPA exercised their petitioning

23  rights "with no expectation of obtaining legitimate government action."  *Southern Union Co.*, 165

24  F. Supp. 2d at 1042.  As such, plaintiffs cannot invoke the legislative sham exception to

25  circumvent *Noerr-Pennington* immunity.[3]

26

27  [3]  Moreover, even if the judicial sham exception applied rather than the legislative one, plaintiffs
have not pled sufficient grounds for applying that exception here.  Plaintiffs' alleged injuries stem

28  from the outcome of the government processes, the issuance of the permits themselves, rather

14

1    Accordingly, the court finds that the alleged conduct of defendants Occidental, Chevron,

2    CIPA, and WSPA does not fall within the sham exception, and that plaintiffs' claims against

3    these defendants are barred by the First Amendment's *Noerr-Pennington* doctrine.

4    Defendants' arguments are less persuasive, however, with respect to the applicability of

5    the *Noerr-Pennington* doctrine to government defendants DOGGR, Governor Brown, Kustic,

6    Nechodom, and Oviatt.  Plaintiffs' claims against these government defendants are premised on

7    alleged conduct including: (i) defendant Governor Brown's personnel decisions concerning

8    Miller and Chernow, (Doc. No. 16 at 49, ¶ 238); (ii) defendant Governor Brown's declining to

9    provide documents in response to Public Records Act requests, (*Id.*); (iii) defendant DOGGR,

10   Kustic, and Oviatt's private meetings with oil companies and trade groups, (*Id.* at 30, 38–40, ¶¶

11   139, 189–196, 201); and (iv) defendant Oviatt and defendant Nechodom's communications with

12   unidentified farmers concerning complaints about contamination, (*Id.* at 48, ¶ 238.)

13   As defendants correctly observe, *Noerr-Pennington* can apply to government actors acting

14   in their official capacities.  *See Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1094 (9th

15   Cir. 2000) (finding the doctrine applicable to government officials petitioning an Arizona

16   county).  However, government actors are only protected by *Noerr-Pennington* if they engage in

17   activity that is properly considered petitioning or "sufficiently related to petitioning activity."

18   *Sosa*, 437 F.3d at 935; *see also Manistee Town Ctr.*, 227 F.3d at 1094 (finding that city officials'

19   lobbying efforts amounted to a petition on behalf of citizens); *cf. Kearney*, 590 F.3d at 644

20   (concluding that "there is no reason, however, to limit *Manistee*'s holding to lobbying efforts,"

21   and noting that *Noerr-Pennington* immunity can apply when government officials act to "advance

22   their constituents' goals, both expressed and perceived").  Thus, the *Noerr-Pennington* doctrine

23   generally does not apply to actors engaging in conduct to influence private associations.  *Allied*

24   *Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 501–02 (1988).  *But cf. Sosa*, 437 F.3d

25   at 935 (noting that communications with private parties can trigger *Noerr-Pennington* "so long as

26   _____

27   than from the government process.  *See Manistee Town Center v. City of Glendale*, 227 F.3d
     1090, 1094 (9th Cir. 2000).  Although plaintiffs allege an unlawful conspiracy to obtain the
     permits, merely alleging the involvement of government officials in a conspiracy does not allow

28   plaintiffs to circumvent the *Noerr-Pennington* doctrine.  *See Boone*, 841 F.2d at 897.

they are sufficiently related to petitioning activity").  The Ninth Circuit has generally not interpreted *Noerr-Pennington* to extend immunity to state actors engaging with private entities who are themselves exercising petitioning rights.  *See generally Manistee Town Ctr.*, 227 F.3d at 1093–94 (observing that government actors are only protected by *Noerr-Pennington* when engaging in petitioning activity aimed at "another government entity"); *Kearney*, 590 F.3d at 644–45 (finding that  "a governmental entity or official may receive *Noerr–Pennington* immunity for the petitioning involved in an eminent domain proceeding," because "a government entity acts on behalf of the public it represents when it seeks to take private property and convert it to public use").

Here, plaintiffs' claims against the government defendants are primarily premised on the alleged interactions of those defendants with private oil companies and trade groups, and not on attempts by those government defendants to engage with other state entities for the sake of "procuring favorable government action."  *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998).  Because plaintiffs' claims against defendants Governor Brown, the DOGGR, Kustic, Nechodom, and Oviatt, are not rooted in petitioning conduct, the *Noerr-Pennington* doctrine does not bar these claims against the government defendants.[4]

### III.     Eleventh Amendment

Defendants next argue that plaintiffs' claims against defendants DOGGR, Governor Brown, Nechodom, and Kustic are barred by the Eleventh Amendment.

The Eleventh Amendment prohibits federal courts from hearing suits brought by private citizens against state governments without the state's consent.  *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 (9th Cir. 1997); *Natural Resources Defense Council v. Cal. Dept. of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996).

---

[4]  In arguing that their alleged conduct brings them within the *Noerr-Pennington* doctrine, the government defendants rely in large part on the decision in *Boone*.  In this court's view, that argument misses the mark.  First, the defendant at issue in the *Boone* decision was a private development company clearly engaged in petitioning activity, not a government official.  841 F.2d at 894–95.  Second, in their pending motion to dismiss the government defendants have not articulated in what way the activity they are alleged to have engaged in comes within the ambit of the doctrine.

1    Application of Eleventh Amendment immunity subjects a complaint to dismissal for lack of

2    subject matter jurisdiction.  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–1040 (9th

3    Cir. 2003).

4         State immunity extends to state agencies and to state officers who act on behalf of the

5    state.  *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–46

6    (1993); *see also Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007) (Eleventh Amendment

7    bars § 1983 damages claims against state officials in their official capacity); *Taylor v. List*, 880

8    F.2d 1040, 1045 (9th Cir.1989) (Eleventh Amendment immunity applies to state agencies). *cf.*

9    *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422–23 (9th Cir. 1991) (noting that immunity may

10   not apply if the entity "is organized or managed in such a way that it does not qualify as an arm of

11   the state").  Pursuant to the Eleventh Amendment, state agencies and officials are generally

12   immune from liability under RICO and 42 U.S.C. § 1983.  *See Vierra v. California Highway*

13   *Patrol*, 644 F. Supp. 2d 1219, 1232 (E.D. Cal. 2009); *see also Thornton v. Brown*, 757 F.3d 834,

14   839 (9th Cir. 2013); *Brown v. California. Dept. of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009); *Bair*

15   *v. Krug*, 853 F.2d 672, 674–75 (9th Cir.1988) (finding that RICO does not override a state's

16   sovereign immunity).  However, the Eleventh Amendment does not bar suits against state

17   officials sued in their individual capacity for acts taken during the course of their official duties.

18   *Hafer*, 502 U.S. at 31; *Stilwell v. City of Williams*, 831 F.3d 1234, 1245-46 (9th Cir. 2016), *Pena*

19   *v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992).

20        There are various exceptions to Eleventh Amendment immunity.  First, Congress may

21   abrogate the states' sovereign immunity when it unequivocally expresses its intent to do so, and

22   when it acts pursuant to a valid exercise of power.  *Townsend v. Univ. of Alaska*, 543 F.3d 478,

23   484 (9th Cir. 2008); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)

24   (noting that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh

25   Amendment immunity").  Second, the Eleventh Amendment does not bar suit in federal court

26   against a state officer accused of violating federal statutory or constitutional law.  *See Ex parte*

27   *Young*, 209 U.S. 123, 159–60 (1908).  The *Ex parte Young* doctrine is premised on the notion that

28   states cannot authorize state officers to violate the Constitution and laws of the United States.

1    *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984*); Sofamor Danek Group,*

2    *Inc*., 124 F.3d at 1183.  Accordingly, when a plaintiff brings suit against a state official alleging a

3    violation of federal law, the court may award prospective injunctive relief, but may not award

4    retroactive relief that requires the payment of funds from the state treasury.  *Pennhurst*, 465 U.S.

5    at 102–03; *Sofamor Danek Group, Inc.*, 124 F.3d at 1184; *Natural Resources Defense Council v.*

6    *California Dep't of Transportation*, 96 F.3d 420, 422 (9th Cir. 1996) ("[W]hen a plaintiff brings

7    suit against a state official alleging a violation of federal law, the federal court may award

8    prospective injunctive relief that governs the official's future conduct, but may not award

9    retroactive relief that requires the payment of funds from the state treasury."); *see also Pena*, 976

10    F.2d at 473 (emphasizing that the Eleventh Amendment does not bar suits seeking damages

11    against state officials sued in their individual capacities).

12         To determine whether *Ex parte Young* applies, a court "need only conduct a

13    straightforward inquiry into whether the complaint alleges an ongoing violation of federal law

14    and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service*

15    *Com'n of Maryland*, 535 U.S. 635, 645 (2002).  To invoke *Ex parte Young* against an official, the

16    official sued must have some connection to the enforcement of the allegedly unconstitutional act.

17    *Ex parte Young*, 209 U.S. at 157; *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d

18    1128, 1134 (9th Cir. 2012).  This connection "must be fairly direct; a generalized duty to enforce

19    state law or general supervisory power over the persons responsible for enforcing the challenged

20    provision will not subject an official to suit." *Coalition to Defend Affirmative Action*, 674 F.3d at

21    1134 (quoting *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)).

22         An entity invoking Eleventh Amendment immunity generally bears the burden of

23    asserting and ultimately proving those matters necessary to establish its defense.  *Del Campo v.*

24    *Kennedy*, 517 F.3d 1070, 1075 (9th Cir. 2008); *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d

25    754, 762 n.1 (9th Cir. 1999), *amended by* 201 F.3d 1186 (9th Cir. 2000).  However, once a

26    defendant meets this burden, the burden shifts to plaintiff to demonstrate that an exception to

27    Eleventh Amendment immunity applies.  *See Tosco Corp. v. Communities for a Better Env't.*, 236

28    F.3d 495, 499 (9th Cir. 2001).

1    Here, defendants DOGGR and CIPA assert in their motions to dismiss that plaintiffs'

2   claims against defendants DOGGR, Governor Brown, Kustic, Nechodom are barred by the

3   Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction.  (Doc. Nos.

4   55 at 26–27; 64-1 at 14–15.)  Defendants make three specific arguments in this regard.  First,

5   defendants argue that the DOGGR is immune from liability under Eleventh Amendment

6   immunity and, as a state agency, is not subject to the *Ex parte Young* exception.  (Doc. Nos. 55 at

7   26–27; 64-1 at 14–15.)  Second, defendant DOGGR argues that plaintiffs cannot seek monetary

8   damages against defendants Governor Brown, Kustic, and Nechodom, because the Eleventh

9   Amendment bars all kinds of relief other than prospective relief.  (Doc. No. 64-1 at 16.)  Finally,

10   defendant DOGGR argues that defendants Governor Brown, Kustic, and Nechodom are immune

11   from liability under the Eleventh Amendment, and that *Ex parte Young* does not apply.  (Doc. No.

12   64-1 at 17.)  Defendant DOGGR contends that *Ex parte Young* does not apply to claims against

13   defendants Governor Brown and Nechodom because there are no allegations establishing that

14   they did not have a sufficiently close connection to the enforcement of the allegedly

15   unconstitutional acts.  (*Id.*)  In particular, defendant argues that only current DOGGR supervisors

16   have "direct authority and principal responsibility for enforcing" legislation related to the

17   issuance of well-drilling permits.  (*Id.*)  Defendant also contends that the Eleventh Amendment

18   bars plaintiffs' claims against former DOGGR Supervisor Kustic.  (*Id.*)  While defendants

19   concede that *Ex parte Young* can apply to current DOGGR supervisors, they argue that former

20   supervisors do not have the type of direct connection to allegedly unconstitutional activities

21   required under *Ex parte Young*.  (*Id.*)

22    In their opposition to defendants' motions to dismiss, plaintiffs do not contest that the

23   Eleventh Amendment bars claims against defendant DOGGR.  (Doc. No. 77.)  Plaintiffs also do

24   not deny that the Eleventh Amendment bars all relief other than prospective injunctive relief.

25   (Doc. No. 77 at 21.)  However, plaintiffs contend that claims against defendants Governor Brown,

26   Nechodom, and Kustic are not barred by the Eleventh Amendment due to the applicability of the

27   *Ex parte Young* doctrine.  (*Id.* at 19–21.)  Plaintiffs argue that *Ex parte Young* applies here

28   because defendants Governor Brown and Nechodom have a sufficiently close connection to the

1   enforcement of alleged unconstitutional acts, and because defendant Nechodom conspired with

2   current state officials to effectuate constitutional violations.  (*Id.* at 19–21.)

3        The court concludes that the Eleventh Amendment bars all claims against defendant

4   DOGGR, claims against defendants Governor Brown, Nechodom, and Kustic in their official

5   capacities for monetary relief, and claims against defendants Governor Brown and Kustic for

6   injunctive relief.  First, claims against the DOGGR are barred as a matter of law because the

7   DOGGR is a state agency protected by Eleventh Amendment immunity.  *See National Audubon*

8   *Society, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) ("The two state agencies are also

9   immune from suit because they are state entities, not individual state officers."); *Freeman v.*

10  *Oakland Unified School Dist.*, 179 F.3d 846, 847 (9th Cir. 1999).

11       Second, plaintiffs' claims for monetary relief against defendants Governor Brown,

12  Nechodom, and Kustic in their official capacities are also barred by the Eleventh Amendment.

13  As noted above, the Eleventh Amendment bars official capacity suits against government entities

14  seeking monetary damages.  *See Pena*, 976 F.2d at 473; *see generally Hafer v. Melo*, 502 U.S. 21,

15  26 (1991) (noting that "the phrase 'acting in their official capacities' is best understood as a

16  reference to the capacity in which the state officer is sued, not the capacity in which the officer

17  inflicts the alleged injury").  Here, plaintiffs' FAC does not explicitly state whether plaintiffs

18  bring claims against state defendants in their official or individual capacities.  (Doc. No. 16.)  At

19  oral argument on the pending motion, plaintiffs' counsel described this action as a "hybrid"

20  between an official and individual capacity suit.  (Doc. No. 165 at 39.)  Insofar as plaintiffs bring

21  claims for monetary damages against defendants Governor Brown, Nechodom, and Kustic in

22  their official capacities, these claims are barred under the Eleventh Amendment.  *See Pennhurst*,

23  465 U.S. at 102–03.  To the extent plaintiffs seek monetary damages against these state

24  defendants in their individual capacity, however, plaintiffs' claims are not precluded by the

25  Eleventh Amendment.  *See Pena*, 976 F.2d at 473.

26       Plaintiffs' claims against defendants Governor Brown and Kustic for prospective

27  injunctive relief are also barred by the Eleventh Amendment.  The FAC alleges that defendant

28  Governor Brown "requested records about the permitting process," (Doc. No. 16 at 29, ¶ 140);

advised the DOGGR on its permitting process, (*Id.* at 5–6, 31, ¶¶ 23, 148); and fired a DOGGR supervisor based on her refusal to approve certain well-drilling permits, subsequently converting the position of DOGGR supervisor to a political appointment, (*Id.* at 6, 33, ¶¶ 23–25, 156). However, the FAC does not allege facts suggesting that defendant Governor Brown has the requisite enforcement authority to directly issue the permits in question or to change the rules governing the permit process. Thus, plaintiffs may not invoke *Ex parte Young* with respect to claims against defendant Governor Brown, and plaintiffs' claims for prospective injunctive relief against this defendant are barred by the Eleventh Amendment. *See, e.g.*, *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (finding Governor Brown was entitled to Eleventh Amendment immunity with respect to claims for prospective injunctive relief based on his alleged involvement in administering a state law plaintiffs claimed was unconstitutional, because "his only connection to [the relevant statute] is his general duty to enforce California law"); *National Audubon Soc., Inc.*, 307 F.3d at 847 (finding that "suit is barred against the Governor . . . as there is no showing that they have the requisite enforcement connection"); *cf. Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1110 (E.D. Cal. 2002) (holding that Governor Brown was subject to suit under *Ex parte Young* where the plaintiff alleged "a specific connection to the challenged statute," in that the governor "negotiated and approved the compacts that give rise to the plaintiffs' alleged injuries"), *aff'd* 353 F.3d 712 (9th Cir. 2003).

Plaintiffs also may not invoke *Ex parte Young* in pursuing claims against defendant Kustic, the former DOGGR Supervisor. It is undisputed that the current DOGGR Supervisor has a direct enforcement connection to the allegedly unconstitutional actions identified by plaintiffs. However, a number of district courts in this circuit have concluded that *Ex parte Young* does not apply to former government officials sued in their official capacities, even if those officials may have previously been subject to suit under the *Ex parte Young* doctrine. *See, e.g.*, *Marilley v. McCamman*, No. C–11–02418 DMR, 2011 WL 5416254, at *9 (N.D. Cal. Nov. 8, 2011) (finding that the Eleventh Amendment barred claims against ex-government employees "given their status as former [officials]"). The rationale that has typically been offered by courts reaching this

1   conclusion is that former government officials are "no longer in a position to provide injunctive

2   relief." *Himmelberger v. Lamarque*, No. C 03-3011 RMW (PR), 2008 WL 2683117, at *4 (N.D.

3   Cal. July 3, 2008); *see also Redd v. Alameida*, No. C 05-3675 JF (PR), 2007 WL 518838, at *2

4   (N.D. Cal. Feb. 14, 2007) (finding that the Eleventh Amendment barred claims against ex-

5   government actors because such defendants were not "in a position to provide injunctive relief");

6   *but cf. Reefshare, Ltd. v. Nagata*, No. CV 87-0024, 1987 WL 109921, at *14–15 (D. Hawai'i

7   Aug. 4, 1987) (finding that the Eleventh Amendment did not bar suit against a former government

8   official for prospective injunctive and declaratory relief, but not addressing the feasibility of

9   injunctive relief involving former government officials, and not considering the decisions of

10  courts concluding that such claims against former officials were barred).  Here, defendant Kustic

11  is no longer an active DOGGR supervisor.  Ostensibly, he is therefore no longer involved in the

12  well-drilling permit issuance process, and would not be in a position to comply with any court

13  order directing his actions in that area.  Plaintiffs' official capacity claims against defendant

14  Kustic are thus barred by the Eleventh Amendment, and plaintiffs may not invoke *Ex parte Young*

15  with respect to defendant Kustic.

16          Next, defendant Nechodom is immune from suit in his official capacity under the

17  Eleventh Amendment, but may properly be sued for prospective injunctive relief.  In the FAC,

18  plaintiffs allege the following: that defendant Nechodom was a director of the CDC at the time of

19  the challenged action; that he "[set] policies to permit injection wells into or near fresh water";

20  and that he attended regular meetings with DOGGR officials and California oil and gas

21  companies to negotiate the granting of underground injection permits.  (Doc. No. 16 at 17, 34, 51,

22  ¶¶ 76, 162, 251.)  California Public Resources Code § 3013 additionally provides that CDC

23  directors "shall have all powers" that are "necessary to carry out the purposes of this division,"

24  and that DOGGR supervisors may only act "with the approval of the director."  Cal. Pub. Res.

25  Code. § 3013.[5]  Together, plaintiffs' allegations and this statutory language suggest that defendant

26  _____

27  [5]  California Public Resources Code § 3103 reads: "This division shall be liberally construed to
    meet its purposes, and the director and the supervisor, acting with the approval of the director,
    shall have all powers, including the authority to adopt rules and regulations, which may be
28  necessary to carry out the purposes of this division."

1    Nechodom had more than a "general duty to enforce," but rather had a direct role in approving

2    the DOGGR supervisor's permit decisions.  *See Ex parte Young*, 209 U.S. at 157.  As such,

3    defendant Nechodom has the requisite connection to enforcement to be subject to suit pursuant to

4    *Ex parte Young* and may be sued for prospective injunctive relief.  *See Artichoke Joe's*, 216 F.

5    Supp. 2d at 1110 (holding that Governor Brown was subject to suit under *Ex parte Young* where

6    the plaintiff alleged "a specific connection to the challenged statute," in that the governor

7    "approved the compacts that give rise to the plaintiffs' alleged injuries").

8         **IV. Absolute Immunity**

9         Defendants also argue that the plaintiffs' claims against defendants Governor Brown,

10   Nechodom, Kustic, and Oviatt are barred by absolute immunity.[6]

11        Legislators and judges have absolute immunity from suits stemming from acts committed

12   within the jurisdiction of their position.  *See Johnson v. Reagan*, 524 F.2d 1123, 1124 (9th Cir.

13   1975); *see generally* Steven H. Steinglass, Federal Immunity Doctrines, § 15:2 (2015).

14   Specifically, "[t]he absolute immunity of legislators, in their legislative functions . . . now is well

15   settled."  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (citations omitted); *see also Trevino by*

16   *and Through Cruz v. Gates*, 23 F.3d 1480, 1482 (9th Cir. 1994).  Absolute immunity extends to

17   federal, state, and local legislators, and precludes suits for both injunctive and monetary relief.

18   *See Supreme Court v. Consumers Union*, 446 U.S. 719, 731–34 (1980); *Zamsky v. Hansell*, 933

19   F.2d 677, 684 (9th Cir. 1991); *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1349 (9th Cir.

20   1982).  The aim of this immunity is to "protec[t] the legislative process by shielding lawmakers

21   from civil liability based on their legislative role which necessarily involves the balancing of

22   social needs and rights of different groups."  *Trevino*, 23 F.3d at 1482; *see also Tenney v.*

23   *Brandhove*, 341 U.S. 367, 377 (1951).

24   /////

25

26   [6] Defendant DOGGR also argues that absolute and qualified immunity bar plaintiffs' RICO and
     § 1983 claims against it.  (Doc. No. 64-1 at 25–29.)  Having found that the Eleventh Amendment
27   entirely precludes plaintiffs' claims against defendant DOGGR, the court need not reach the issue
28   of whether defendant DOGGR is entitled to absolute or qualified immunity.

1    "Although legislators undertaking legislative acts are absolutely immune from suit, they

2    receive less protection when performing executive acts." *Cinevision Corp. v. City of Burbank*,

3    745 F.2d 560, 577–80 (9th Cir. 1984); *see also Zamsky*, 933 F.2d at 684.  In deciding whether an

4    act is legislative in nature, courts in this circuit are to consider a number of factors, including:

5    (i) whether the act involves the formulation of policy rather than ad hoc decision-making, and

6    (ii) whether the act applies generally to the community rather than being directed at one or few

7    individuals.  *See Trevino*, 23 F.3d at 1482*; see also Norse v. City of Santa Cruz*, 629 F.3d 966,

8    977–78 (9th Cir. 2010).

9            Judges and those performing quasi-judicial functions are absolutely immune from liability

10   for damages based on acts performed within their judicial capacities.  *Stump v. Sparkman*, 435

11   U.S. 349, 360 (1978); *see also In re Castillo*, 297 F.3d 940, 948 (9th Cir. 2002); *Duvall v. County*

12   *of Kitsap*, 260 F.3d 1124, 1142 (9th Cir. 2001) (noting that quasi-judicial absolute immunity

13   precludes suits for monetary damages, but does not protect against suits for injunctive relief).

14   Absolute immunity applies to non-judicial officers "only if they perform official duties that are

15   functionally comparable to those of judges, i.e. duties that involve the exercise of discretion in

16   resolving disputes."  *In re Castillo*, 297 F.3d at 948; *see also Antoine v. Byers & Anderson, Inc.*,

17   508 U.S. 429, 435 (1993).  Officials of government agencies may thus be entitled to absolute

18   immunity, but only insofar as they perform functions analogous to those of a prosecutor or a

19   judge.  *See Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999); *see also Burton v. Infinity*

20   *Capital Mgt.*, 753 F.3d 954, 959–60 (9th Cir. 2014).  The Ninth Circuit has articulated six

21   nonexclusive factors for courts to consider in determining whether a defendant is entitled to

22   quasi-judicial immunity: (i) the need to assure that the individual can perform his functions

23   without harassment or intimidation; (ii) the presence of safeguards that reduce the need for

24   lawsuits as a means of controlling unconstitutional conduct; (iii) insulation from political

25   influence; (iv) the importance of precedent; (v) the adversary nature of the process; and (vi) the

26   correctability of error on appeal.  *Buckwalter v. Nev. Bd. of Med. Examiners*, 678 F.3d 737, 740

27   (9th Cir. 2012).

28   /////

For legislative and judicial absolute immunity, the party asserting the immunity carries the burden of proof. *See Hafer v. Melo*, 502 U.S. 21, 29 (1991) (citing *Burns v. Reed*, 500 U.S. 478, 486–87 (1991)). "[O]fficials seeking absolute immunity must show that such immunity is justified for the governmental function at issue." *Id.*

Defendants move to dismiss plaintiffs' RICO and § 1983 claims against defendants Governor Brown, Nechodom, Kustic, and Oviatt on the basis of absolute immunity. Defendants first invoke absolute legislative immunity. Defendant DOGGR argues that absolute legislative immunity applies to all government defendants because plaintiffs' claims are based on the DOGGR's promulgation of policies and regulations concerning underground well injection. (Doc. No. 64-1 at 26.) Meanwhile, defendant Oviatt argues that plaintiffs' specific claims against her stem entirely from her legislative acts—her involvement in county-wide zoning legislation. (Doc. Nos. 57 at 18–19; 64-1 at 25–26.)

Defendants next argue that, insofar as plaintiffs' claims relate to DOGGR permitting decisions, such claims are barred by quasi-judicial absolute immunity. (Doc. No. 64-1 at 26–27.) Defendant DOGGR contends that permitting decisions are adjudicatory in nature, since they are subject to a statutory complaint process and to judicial review, and that defendants are thus absolutely immune from suit premised on their involvement in those permitting decisions. (*Id.*)

In their oppositions, plaintiffs argue that the individual government defendants are not protected by absolute immunity. They first deny that absolute legislative immunity applies here, arguing that their claims do not arise from the DOGGR's promulgation of new regulations, but rather from defendants' efforts to deviate from existing federal laws and policies. (Doc. No. 77 at 22.) Plaintiffs also deny that absolute judicial immunity applies, contending that the DOGGR permitting process is not adjudicatory in nature. (*Id.* at 24–25.)

Here, plaintiffs' claims against defendants Governor Brown, Nechodom, Kustic, and Oviatt are based on the following alleged conduct: (i) defendant Governor Brown acquiring certain permit approval records, communicating with DOGGR officials about the operation of the permitting program, and making DOGGR hiring decisions with the aim of controlling the well-drilling permit process, (Doc. No. 16 at 5–6, 29, 31, 33, ¶¶ 23–25, 148, 158); (ii) defendant

25

1  Nechodom "setting policies to permit injection wells into or near fresh water," endorsing a

2  flexible permit-granting process by DOGGR supervisors, and attending meetings with DOGGR

3  officials and oil companies to negotiate the granting of underground injection permits, (*Id.* at 6,

4  17, 34, 51, ¶¶ 26, 76, 162, 251); (iii) defendant Kustic issuing underground injection permits to

5  certain oil companies, and meeting with oil and trade groups to discuss environmental issues, (*Id.*

6  at 30, 38–40, ¶¶ 139, 189–196, 201); and (iv) defendant Oviatt communicating with defendant

7  Nechodom to discuss environmental issues, and working with other defendants to intimidate

8  witnesses, suppress research, destroy documents, and withhold information from the public, (*Id.*

9  at 7, 34, 35, at ¶¶ 35–37, 163, 166, 171).  Based upon these allegations in the FAC it appears that

10  plaintiffs base their claims on conduct unrelated to the DOGGR's promulgation of environmental

11  regulations.  Though the FAC makes general reference to defendant Nechodom's involvement in

12  setting DOGGR environmental policies, it does not appear that plaintiffs pursue liability against

13  defendant Nechodom based on his involvement in enacting DOGGR regulations.  The court

14  therefore concludes that defendants have not met their burden of demonstrating the applicability

15  of absolute legislative immunity to any of the individual government defendants.  *See Hafer*, 502

16  U.S. at 29 ("[O]fficials seeking absolute immunity must show that such immunity is justified for

17  the governmental function at issue.") (citing *Burns*, 500 U.S. at 486–87).

18       Absolute judicial immunity is inapplicable to claims against defendants Governor Brown

19  and Oviatt, since the FAC pleads no facts indicating that these defendants were involved in the

20  DOGGR's permitting process.  With respect to plaintiffs' claims against defendants Nechodom

21  and Kustic, the applicability of absolute judicial immunity depends on whether their alleged

22  involvement in DOGGR permitting constitutes quasi-judicial conduct.  While defendants argue

23  generally that DOGGR permitting process is adjudicatory in nature, they have failed to address

24  the factors articulated by the Ninth Circuit for identifying quasi-judicial activities.  (Doc. No. 64-

25  1 at 26–27.)  Defendants point out only that DOGGR permit decisions are subject to a statutory

26  complaint process, without analyzing whether the decision to award a permit is itself akin to a

27  judicial proceeding.  (*Id.*)  Accordingly, the court concludes that defendants have not borne their

28  burden of establishing the applicability of quasi-judicial immunity here.  *See Swenson v. Siskiyou*

1    *Cty*, No. 2:08-cv-1675 KJM CMK, 2014 WL 6390656, at *13 (E.D. Cal. Nov. 17, 2014) (finding

2    that defendants failed to meet their burden of showing quasi-judicial absolute immunity because

3    they neither acknowledged nor addressed the Ninth Circuit's factors); *see also Howard v. Suski*,

4    26 F.3d 84, 86 (8th Cir. 1994) (noting that "correctability of error on appeal" does not alone

5    "provide sufficient checks on agency zeal to justify absolute immunity"); *Meyers v. Contra Costa*

6    *Cty. Dep't of Soc. Serv.*, 812 F.2d 1154, 1157 (9th Cir. 1987) (finding that a social worker was

7    not entitled to absolute immunity for conduct that occurred prior to the initiation of quasi-judicial

8    child dependency proceedings).

9        Accordingly, the court concludes plaintiffs' claims against defendants Governor Brown,

10    Nechodom, Kustic, and Oviatt are not barred by absolute immunity.

11    **V.  Qualified Immunity**

12        Defendants also argue that plaintiffs' claims against defendants Governor Brown,

13    Nechodom, Kustic, and Oviatt are barred by qualified immunity.

14        Government officials enjoy qualified immunity from civil damages unless their conduct

15    violates "clearly established statutory or constitutional rights of which a reasonable person would

16    have known." *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*,

17    457 U.S. 800, 818 (1982)); *see also Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).  When

18    determining whether qualified immunity applies, the central questions are: (i) whether the facts

19    alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct

20    violated a statutory or constitutional right; and (ii) whether the right at issue was "clearly

21    established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S.

22    223, 236 (2009) (holding that this two-part analysis is "often beneficial" but not mandatory).

23        "A government official's conduct violate[s] clearly established law when, at the time of

24    the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

25    official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*,

26    563 U.S. 731, 741 ((2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In this

27    regard, "existing precedent must have placed the statutory or constitutional question beyond

28    debate." *Id.*; *see also Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (observing that "[t]he

1    proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair

2    warning' to the officials that their conduct was unconstitutional") (quoting *Saucier*, 533 U.S. at

3    202).  The inquiry must be undertaken in light of the specific context of the particular case.

4    *Saucier*, 533 U.S. at 201.

5         Plaintiffs bear the burden of proving the existence of a "clearly established" right at the

6    time of the allegedly impermissible conduct.  *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th

7    Cir. 2014); *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).  If this burden is

8    met by plaintiff, the defendant then bears the burden of establishing that his actions were

9    reasonable, even though they might have violated the plaintiff's federally protected rights.  *Doe v.*

10   *Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995); *see also DiRuzza v. County of*

11   *Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000).  "[R]egardless of whether the constitutional

12   violation occurred, the [official] should prevail if the right asserted by the plaintiff was not

13   'clearly established' or the [official] could have reasonably believed that his particular conduct

14   was lawful."  *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991); *see also Moran v. State*

15   *of Washington*, 147 F.3d 839, 844 (9th Cir. 1998)

16        Defendants DOGGR and Oviatt argue that plaintiffs' claims against Governor Brown,

17   Nechodom, Kustic, and Oviatt are barred by qualified immunity.  In particular, defendants

18   contend that plaintiffs' FAC does not sufficiently allege defendants violated any clearly

19   established statutory or a constitutional rights and, in any event, defendants could have reasonably

20   believed that their actions were legal.  (Doc. Nos. 57 at 21–22; 64-1 at 27–28.)

21        Plaintiffs contend that defendants are not entitled to qualified immunity, because their

22   actions were unlawful and they could not have reasonably believed otherwise.  (Doc. Nos. 76 at

23   15–17; 77 at 25–26.)  In this regard, plaintiffs reference the FAC's allegations of SDWA and state

24   law violations.  (Doc. Nos. 76 at 17; 77 at 25–26.)

25        The court concludes that plaintiffs' claims against defendants Governor Brown,

26   Nechodom, Kustic, and Oviatt for monetary damages are barred by qualified immunity.  As noted

27   above, plaintiffs pursue liability against these defendants based on a potpourri of conclusory

28   factual allegations, including claims of defendants' conspiring to violate the SDWA, illegally

meeting with private entities to discuss environmental policies, blocking public comment on environmental laws, destroying government documents, and intimidating witnesses.  (*Id.* at 5–7, 17 29–31, 33–34, 35, 38–40, 48, 51 at ¶¶ 23–25, 35–37, 76, 139, 148, 158, 162–63, 166, 171, 189–196, 201, 238, 251).  Notably, these broad, highly charged general claims are made without specific factual allegations supporting them.  As discussed in further detail below, plaintiffs in their FAC allege no particular conduct by these defendants amounting to a statutory or constitutional violation.  *See infra*, Sections VI–VII.  Plaintiffs thus fail to satisfy the first element of the two-prong test for overcoming qualified immunity.  *See, e.g.*, *Dupris v. McDonald*, No. 08–8132–PCT–PGR, 08–8133–PCT–PGR, 2010 WL 231548, at *4 (D. Ariz. Jan. 13, 2010) (stating that "to overcome qualified immunity, a plaintiff 'must allege facts, not simply conclusions, that show that an individual was personally involved in the [violation]'") (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).  Consequently, plaintiffs' § 1983 and RICO claims for monetary damages against defendants Governor Brown, Kustic, Nechodom, and Oviatt, as pled in the FAC, are barred by qualified immunity.

## VI.   RICO claims

Defendants argue that plaintiffs' RICO claims against them should be dismissed because plaintiffs lack standing to bring these claims and have failed to sufficiently plead the elements of a RICO claim in their FAC.  The court addresses each argument in turn.

### a.   Standing

To maintain an action in federal court, plaintiffs must allege facts showing that they have Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiffs can allege Article III standing by pleading: "(i) *injury-in-fact*—plaintiffs must allege concrete and particularized and actual or imminent harm to a legally protected interest; (ii) *causal connection*—the injury must be fairly traceable to the conduct complained of; and (iii) *redressability*—a favorable decision must be likely to redress the injury-in-fact." *Barnum Timber v. U.S. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011) (quotation marks and citations omitted) .

Associations must meet additional requirements in order to have Article III standing in federal courts.  In general, an association has standing to bring suit on behalf of their members

1    when three conditions are met: (i) its members would otherwise have standing to sue in their own

2    right; (ii) the interests it seeks to protect are germane to the organization's purpose; and

3    (iii) neither the claim asserted nor the relief requested requires the participation of individual

4    members in the lawsuit.  *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333,

5    342–43 (1977).  No federal court has held that an association has standing to seek monetary relief

6    on behalf of its members, however.  *United Union of Roofers, Waterproofers, & Allied Trades*

7    *No. 40 v. Insurance Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990) (citing

8    *Telecommunication Research & Action Ctr. v. Allnet Communication Servs., Inc.*, 806 F.2d 1093,

9    1095 (D.C. Cir. 1986)); *see also Air Transport Association of America v. Reno*, 80 F.3d 477,

10   484–85 (D.C. Cir. 1996) (and cases cited therein).

11       Plaintiffs bringing claims under the federal RICO statute must also meet additional

12   standing requirements.  Under RICO's civil enforcement mechanism, "[a]ny person injured in his

13   business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefore in any

14   appropriate United States district court."  18 U.S.C. § 1964(c).  To have standing under § 1964(c),

15   a plaintiff must allege: (i) "that his alleged harm qualifies as injury to his business or property;"

16   and (ii) "that his harm was 'by reason of' the RICO violation, which requires the plaintiff to

17   establish proximate causation."  *Canyon County v. Syngenta Seeds, Inc*., 519 F.3d 969, 972 (9th

18   Cir. 2008).  Injury to business or property requires tangible and concrete financial loss, rather

19   than speculative or uncertain harm.  *Guerrero v. Gates*, 357 F.3d 911, 920 (9th Cir. 2004); *Steele*

20   *v. Hospital Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994); *Oscar v. University Students Co-*

21   *operative Assoc.*, 964 F.2d 783, 788 (9th Cir. 1992).  Meanwhile, reliance "on an attenuated chain

22   of conjecture" is insufficient to support proximate causation under § 1964(c).  *Salmon Spawning*

23   *& Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (citation omitted).[7]

24       In their motions to dismiss, defendants Occidental and CRC, Chevron, CIPA, and Oviatt,

25   argue that plaintiffs lack standing under Article III and RICO.  Defendants first contend that the

26   
27   [7]  Plaintiffs with standing may seek treble damages, costs, and attorney's fees under the civil
     RICO statute.  *See* 18 U.S.C. § 1962(c).  However, private parties cannot pursue injunctive relief
     under RICO.  *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1088 (9th Cir. 1986)
28   (observing that "no private equitable action" is permitted under RICO).

1  Committee plaintiff lacks Article III standing to seek monetary relief because associations cannot

2  sue for money damages on behalf of their members.  (Doc. Nos. 51 at 24; 53-1 at 10–11; 55 at

3  22–23; 57 at 25; 59-1 at 15; 63-1 at 10–11.)

4       Defendants Occidental and CRC, CIPA, Oviatt, and WSPA also contend that plaintiffs

5  lack standing under § 1964(c) of RICO.  Plaintiffs' claims for injunctive relief fail, defendants

6  argue, because private parties cannot seek equitable relief in RICO actions.  (Doc. Nos. 51 at 23;

7  55 at 22–23; 57 at 25; 63-1 at 10–11.)  Defendants contend that plaintiffs' claims for monetary

8  damages against individual defendants Wedel and Hopkins also fail because plaintiffs have not

9  sufficiently alleged injury or causation.  (Doc. Nos. 51 at 24; 55 at 23; 57 at 25–26; 59-1 at 15;

10  63-1 at 11–13.)  First, defendants assert that plaintiffs have not adequately alleged injury to

11  business or property, and that plaintiff Wedel has not alleged facts showing a concrete financial

12  loss.  (*Id.*)  Second, defendants argue that both plaintiffs Hopkins and Wedel have failed to

13  sufficiently allege proximate causation.[8]  (Doc. No. 51 at 25; 55 at 23; 57 at 26, 32; 63-1 at 11–

14  13.)  According to defendants Occidental and CRC, in their FAC plaintiffs allege only that

15  defendants' actions indirectly caused harm to plaintiffs' property, offering an attenuated theory of

16  liability.  (Doc. No. 51 at 26.)  Defendants Occidental and CRC, Oviatt, and Chevron contend that

17  causation is especially tenuous with respect to plaintiff Hopkins' claims.  (Doc. Nos. 51 at 24; 57

18  at 26; 59-1 at 16.)  Defendants note that plaintiff Hopkins' only alleged injury is to his cherry

19  trees.  (*Id.*)  They point to the complaint in a separate state court suit brought by plaintiff Hopkins,

20  *Palla Farms*, in which plaintiff alleged that a different party caused the same harm to his cherry

21  trees.  (*Id.*); *see supra* Section I.  Defendants conclude that given these allegations plaintiff

22  Hopkins cannot exclude the possibility that a party other than defendants caused his alleged

23  injury.  (Doc. No. 51 at 25.)

24       In their oppositions to defendants' motions to dismiss, plaintiffs argue they do have

25  Article III standing.  (Doc. No. 71 at 25–26.)  First, plaintiffs argue that courts have not

26

27  ───────────────
   [8]  Defendant Chevron also argues that plaintiffs' failure to allege injury or causation defeats
   standing, but contends that plaintiffs have failed to satisfy the requirements of Article III rather
28  than those of § 1964(c) of RICO.  (Doc. No. 59-1 at 15–17.)

1    conclusively rejected the possibility of associational standing to seek monetary relief, and that the

2    plaintiff Committee here satisfies the *Hunt* factors.  (*Id.*)  Second, plaintiffs argue they have

3    standing under § 1964(c) of RICO.  (Doc. No. 71 at 23–24.)  Plaintiffs do not respond to

4    defendants' argument that private parties cannot sue for injunctive relief under RICO.  (*Id.*)

5    However, plaintiffs contend that they have sufficiently alleged both injury and causation.  They

6    assert that the FAC adequately alleges a connection between the relevant harm, damage to

7    plaintiffs' property from compromised water quality, and the alleged statutory violation, breach

8    of the SDWA.  (*Id.* at 24.)  According to plaintiffs, no more is required for RICO standing.  (*Id.*)

9    Additionally, plaintiffs deny that plaintiff Hopkins' pending state lawsuit defeats injury or

10   proximate cause with respect to his RICO claims presented in the FAC, as there has not been a

11   final adjudication of  that state court action which was initiated before new facts emerged that

12   form the basis of the instant suit.  (*Id.* at 24–25.)

13        The court finds defendants' arguments persuasive.  Given that plaintiffs' claims for

14   monetary relief would "necessarily involve individualized proof and thus the participation of

15   association members," the Committee lacks associational standing to seek monetary damages.

16   *United Union of Roofers v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990) (noting that

17   "no federal court has allowed an association standing to seek monetary relief on behalf of its

18   members," because "claims for monetary relief necessarily involve individualized proof and thus

19   the individual participation of association members"); *Alperin v. Vatican Bank*, No. C-99-04941

20   MMC, 2008 WL 5093000, at *8 (N.D. Cal. Feb. 21, 2008) ("To the extent the associational

21   plaintiffs assert claims for which they are seeking monetary damages, specifically, conversion,

22   unjust enrichment, and restitution, the associational plaintiffs lack standing with respect to such

23   claims.").  While plaintiffs argue that the necessity of some individualized proof does not defeat

24   associational standing, this is true only in the context of suits for non-monetary relief.  *See, e.g.*,

25   *Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.3d

26   1401, (9th Cir. 1991) (finding that  plaintiff's request for declaratory and injunctive relief did not

27   require individualized proof); *Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,

28   570 F. Supp. 2d 533, 542–43 (S.D.N.Y. 2008) (finding that the necessity of a limited amount of

1  individualized proof did not defeat associational standing when the plaintiff association sought

2  only injunctive and declaratory relief).

3          Plaintiffs Hopkins and Wedel have also failed to establish their standing under RICO.

4  The court first notes that plaintiffs have satisfied the civil RICO standard for injury.  The FAC

5  alleges the following injuries suffered by plaintiffs Hopkins and Wedel: (i) "deprivation . . . of

6  [plaintiff Hopkins and Wedel's] property and their right to petition the government" about

7  environmental issues, (*Id.* at 50–52, ¶¶ 242, 253–55), and (ii) "lower yields" in farming

8  operations managed by the farmer plaintiffs, leaving plaintiff Hopkins with "no choice but to

9  remove an entire orchard of cherry trees," (Doc. No. 16 at 6–7, 15, 50–51, ¶¶ 30, 68–68, 246).  It

10 is the case that deprivation of "the right to petition the government" is not a tangible and concrete

11 financial loss, and does not constitute injury to "business or property" as required by § 1964(c).

12 *See Guerrero*, 357 F.3d at 920 (stating that "business or property" injury under § 1964(c) of

13 RICO includes "only direct, tangible, and concrete financial losses," and that economic injuries

14 flowing from plaintiff's intangible injury did not confer statutory standing); *see also Marina*

15 *Point Development Associates v. United States*, 346 F. Supp. 2d 1144, 1148 (C.D. Cal. 2005)

16 (finding that "deprivation of the right to honest government services is not a tangible and concrete

17 financial loss," and thus does not constitute an injury under RICO).  However, plaintiffs have

18 alleged tangible and concrete losses related to agricultural productivity.  In this regard, their FAC

19 adequately alleges plaintiffs Hopkins and Wedel's concrete interest in Kern County farmland by

20 indicating they were responsible for overseeing management of county orchards.  *See Churchill*

21 *County v. Babbitt*, 150 F.3d 1072, 1078 (9th Cir. 1998) ("A plaintiff can establish the requisite

22 threatened concrete interest for [Article III] standing . . . where the plaintiff has the procedural

23 right to protect its interest in land management by showing that it owns or manages land

24 threatened by the challenged action or omission").  The FAC also alleges that plaintiffs

25 experienced economic losses related to a decline in the agricultural productivity of that farmland.

26 While plaintiffs do not quantify the specific amount of loss, plaintiffs' allegations are sufficient at

27 this stage of the litigation to plead injury under § 1964(c).  *See, e.g.*, *Planned Parenthood of*

28 *Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 945 F. Supp. 1355, 1383 (D.

1  Or. 1996) (finding that plaintiffs sufficiently pled a RICO injury in alleging that "defendants'

2  racketeering activities have decreased the volume of business . . . in an amount not less than $50

3  million," despite plaintiffs "not specifically identify[ing] how they calculated their damages");

4  *see generally Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury

5  resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that

6  general allegations embrace those specific facts that are necessary to support the claim").

7      Nonetheless, plaintiffs' Hopkins and Wedel fail to satisfy the proximate cause

8  requirement for standing under § 1964(c) of the RICO statute.  The FAC sets out an excessively

9  attenuated theory of causation.  It does not clearly allege how the defendants' conduct led to a

10  concrete impact on the environment, induced damage to the plaintiffs' farmland, or produced a

11  lower yield in plaintiffs' farming operations.  The causal connection being suggested by the FAC

12  is especially unclear with regards to plaintiff Hopkins' claims, given that he has alleged a

13  different causal source for the very same injuries in his pending state court lawsuit, *Palla Farms*.

14  Ultimately, there are "numerous alternative causes that might be the actual source or sources of

15  the [plaintiffs'] alleged harm."  *Canyon County*, 519 F.3d at 983 (2008); *see also Anza v. Ideal*

16  *Steel Supply Corp.*, 547 U.S. 451, 460 (2006) (noting that attenuated theories of causation are

17  insufficient to allege proximate causation, as required under § 1964(c) of RICO).  The court thus

18  finds that plaintiffs have failed to allege facts in their FAC showing a sufficient causal nexus

19  between the defendants' alleged conduct and the financial harm allegedly suffered by plaintiffs

20  Hopkins and Wedel.  Accordingly, plaintiffs lack standing to bring their RICO claims.

21          **b.  Pleading Sufficiency**

22      Defendants additionally argue that plaintiffs' RICO claims fail under federal pleading

23  standards.

24      The civil RICO statutes allow individuals to file suit and recover treble damages against

25  individuals who, through a "pattern of racketeering activity," acquire an interest in, or conduct the

26  business of, an enterprise engaged in interstate or foreign commerce.  18 U.S.C. §§ 1962(b),

27  1962(c), 1964(d).  In particular, § 1962(c) prohibits conducting the affairs of an enterprise

28  engaged in interstate or foreign commerce through a pattern of racketeering activities.  RICO also

34

creates a private cause of action against individuals who conspire to engage in such prohibited

activity.  18 U.S.C. § 1962(d).

To state a RICO claim under § 1962(c), a plaintiff must allege: (i) conduct (ii) of an

enterprise (ii) through a pattern (iv) of racketeering activity, and (v) injury in the plaintiffs'

business or property by the conduct constituting the violation.  *Sedima, S.P.R.L. v. Imrex Co.,

Inc.*, 473 U.S. 479, 496 (1985); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557, 559 (9th Cir.

2010) (setting forth elements of a RICO claim under 18 U.S.C. § 1962(c)).  "The touchstone of

[Section 1962(c)] is that each individual defendant must be shown to have personally participated

in a pattern of racketeering activity." *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1200 (D. Idaho

2013).

To plead a violation of § 1962(d), meanwhile, a plaintiff must allege "either an agreement

that is a substantive violation of RICO or that the defendants agreed to commit, or participated in,

a violation of two predicate offenses."  *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th

Cir. 2000).  "The illegal agreement need not be express as long as its existence can be inferred

from the words, actions, or interdependence of activities and persons involved." *Oki

Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002).  Under §

1962(d), while a defendant need not have personally committed a predicate act, or even an overt

act in furtherance of the RICO conspiracy, the defendant must be "aware of the essential nature

and scope of the enterprise and intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346

(9th Cir. 1993); *see also Salinas v. United States*, 522 U.S. 52, 63 (1997); *Howard v. America

Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Generally, plaintiffs pursuing RICO claims under both §§ 1962(c) and (d) in federal court

must satisfy the pleading standards of Federal Civil Procedure Rule 8(a).  *See Wagh v. Metris

Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003), overruled on other grounds by *Odom v. Microsoft

Corp.,* 486 F.3d 541, 551 (9th Cir. 2007) (en banc); *see also Cascade Yarns, Inc. v. Knitting

Fever, Inc.*, No. C10-861 RSM, 2011 WL 31862, at *9 (W.D. Wash. Jan. 3, 2011) (noting that,

for plaintiff's RICO-related conspiracy claim, "the conspiracy allegation will be evaluated under

the more liberal Rule 8(a) pleading standard rather than the heightened requirements of Rule

1  9(b)"); *Brewer v. Salyer*, No. CV F 06-01324 AWI DLB, 2007 WL 1454276, at *3 n.2 (E.D. Cal.

2  May 17, 2007) (stating that "the proper standard [for the instant RICO claim] is the notice

3  pleading requirements of Rule 8").  However, when a RICO claim is based on a predicate offense

4  of fraud, the "circumstances constituting fraud . . . shall be stated with particularity" pursuant to

5  Federal Civil Procedure Rule 9(b).  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir.

6  2004); see also *Sanford*, 625 F.3d at 557–58; *Irving v. Lennar Corp.*, No. CIV S–12–290 KJM

7  EFB, 2013 WL 1308712, at *9 (E.D. Cal. Apr. 1, 2013) ("In addition to the pleading

8  requirements of Rule 8, allegations of fraud must meet heightened pleading standards."); *cf. Slade*

9  *v. Gates*, No. 01-8344-RMT, 2002 WL 31357043, at *6 (C.D. Cal. Oct. 2, 2022) ("Other than

10  fraud, RICO predicate acts need not be pled with particularity but must be sufficiently pled to

11  give Defendants notice of the factual basis of the claim.").  Thus, with respect to fraud-based

12  RICO claims, "the pleader must state the time, place, and specific content of the false

13  representations as well as the identities of the parties to the representation."  *Odom,* 486 F.3d at

14  553; *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1989).

15      Here, defendants argue that plaintiffs' RICO claims should be dismissed because they

16  have failed to adequately plead the existence of a RICO enterprise or a pattern of racketeering

17  activity.  The court analyzes both arguments below.

18                **i.  RICO enterprise**

19      First, defendants argue that plaintiffs' RICO claims are subject to dismissal because their

20  FAC fails to adequately allege the existence of a RICO "enterprise" under § 1962(c).

21      The RICO statute defines "enterprise" to include "any individual, partnership, corporation,

22  association, or other legal entity, and any union or group of individuals associated in fact although

23  not a legal entity."  18 U.S.C. § 1961(4).  To show an association-in-fact enterprise, plaintiffs

24  must plead three elements.  First, plaintiffs must plead a common purpose.  *See Eclectic Props.*

25  *E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014); *see also Odom,* 486 F.3d

26  at 552.  To show a common purpose, plaintiffs must allege that the group engaged in enterprise

27  conduct distinct from their own affairs.  *Odom*, 486 F.3d at 549; *cf. Gomez v. Guthy-Renker, LLC*,

28  No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *9 (noting that "in the Ninth Circuit, the

1   law is unsettled as to whether the common purpose must be fraudulent") (quotation omitted).

2   Second, plaintiffs must plead an ongoing structure or organization to the enterprise, which may be

3   either formal or informal.  *See United States v. Turkette*, 452 U.S. 576, 583 (1981); *Eclectic*, 751

4   F.3d at 997; *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1089 (N.D. Cal. 2013); *see*

5   *also Odom*, 486 F.3d at 551 (noting that "an associated-in-fact enterprise under RICO does not

6   require any particular organizational structure, separate or otherwise").  Plaintiffs must also allege

7   facts showing "some participation in the operation or management of the enterprise" by members.

8   *Reves v. Ernst & Young*, 507 U.S. 170, 176 (1993); *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th

9   Cir. 2008).  Third, plaintiffs must plead that the enterprise had the longevity necessary to

10   accomplish its purpose.  *See Eclectic*, 751 F.3d at 997; *see also Odom*, 486 F.3d at 552.  Finally,

11   they must allege facts indicating that the alleged associates in the enterprise, over time,

12   "function[ed] as a continuing unit."  *Turkette*, 452 U.S. at 583.

13        In general, there is "no restriction upon the associations embraced by the definition of

14   enterprise." *United States v. Feldman*, 853 F.2d 648, 655 (9th Cir. 1988) (citing *United States v.*

15   *Turkette*, 452 576, 580 (1981)); *see also Odom*, 486 F.3d at 548 (stating that "this definition is not

16   very demanding").  Thus, a RICO enterprise may include "any union or group of individuals

17   associated in fact."  *Boyle v. United States*, 556 U.S. 938, 944 n.2 (2009); *see also River City*

18   *Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992) (concluding that

19   an enterprise may "consist of a group of individuals associated in fact with various corporations,"

20   but noting that a single entity cannot be both a RICO enterprise and an individual RICO

21   defendant); *cf. Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (noting that a

22   single entity cannot be both a RICO enterprise and an individual RICO defendant).  To the extent

23   that corporations are named as RICO defendants, each individual corporation represents a legal

24   entity and, alone, may be charged as the RICO enterprise.  *See Feldman*, 853 F.2d at 655.

25        In their motions to dismiss, defendants collectively assert three reasons why plaintiffs

26   have failed to adequately allege a RICO enterprise in the FAC.  First, defendants Occidental and

27   CRC, CIPA, Oviatt, and WSPA contend that plaintiffs have not alleged that defendants associated

28   together for a common purpose of engaging in a specific course of conduct.  (Doc. Nos. 51 at 27;

1   55 at 30; 57 at 27; 59-1 at 24–25; 63 at 14–15.)  Second, the same defendants contend that

2   plaintiffs have failed to allege facts indicating the structure of any claimed enterprise.  (Doc. Nos.

3   51 at 27; 55 at 30–31; 57 at 27; 59-1 at 25–26; 63-1 at 14.)  Finally, defendants Occidental and

4   CRC, and CIPA argue that plaintiffs have not pled facts indicating that defendants operated with

5   longevity as a continuous unit.  (Doc. Nos. 51 at 27; 55 at 30.)

6         In their opposition plaintiffs argue that the FAC sufficiently pleads an association-in-fact

7   enterprise by alleging that defendants acted with a common purpose of increasing profits, and

8   engaged in ongoing communications suggestive of an organized conspiracy.  (Doc. No. 71 at 23.)

9   The court finds plaintiffs' argument in this regard to be unpersuasive.

10        In the FAC, plaintiffs allege that defendants "formed an 'enterprise,'" with a common

11   purpose "to maximize profits, increase revenues, and avoid the consequences of the

12   contamination of fresh water."  (Doc. No. 16 at 11, 34, 50, ¶¶ 51, 163, 244.)  In pursuit of their

13   common purpose, the FAC states, defendants engaged in mail and wire communication to discuss

14   environmental regulations in Kern County, (*Id.* at 7, ¶ 37.)  It is alleged, for example, that

15   defendant Oviatt sent an email to defendant Nechodom stating that Kern County and the CDC

16   "have the same goal" with respect to environmental regulation.  (*Id.* at 7, ¶ 37.)  Additionally, the

17   FAC alleges that defendant oil companies contributed money to defendant Governor Brown, and

18   held meetings with the trade association defendants and unnamed DOGGR officials.  (*Id.* at 10–

19   11, 33, 38–40, ¶¶ 50–51, 154–155, 185–198, 201.)  Though plaintiffs now argue in conclusory

20   fashion that they have alleged the existence of a common purpose, the FAC pleads no specific

21   facts indicating that defendants acted with an objective unrelated to ordinary business or

22   government aims.  *See In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632,

23   at *5 (S.D. Cal. May 22, 2009) (finding RICO claims were not adequately pleaded because, after

24   plaintiff's legal conclusions were set aside, all that remained was "conduct consistent with

25   ordinary business conduct and an ordinary business purpose"); *see also Gomez v. Guthy-Renker,*

26   *LLC*, No. EDCV1401425JGBKKX, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (finding

27   that a routine contract for services did not constitute a distinct enterprise); *cf. Odom*, 486 F.3d at

28   543 (finding a RICO enterprise's common purpose was adequately plead where the complaint

1   alleged specific facts describing the fraudulent means used to carry out the scheme).  Here,

2   plaintiffs' FAC also fails to allege facts indicating that all the named defendants acted with the

3   same purpose in mind.  Instead, plaintiffs allege only a series of disconnected incidents, each

4   involving a subset of the overall group of defendants, with no clear indication of a unified agenda.

5   *See Doan v. Singh*, 617 Fed. Appx. 684, 686 (9th Cir. 2015)[9] (finding that plaintiffs had failed to

6   adequately allege a RICO enterprise with a common purpose when, based on the complaint, "it is

7   not clear what exactly each individual did, when they did it, or how they functioned together as a

8   continuing unit").

9          Similarly, plaintiffs have failed to sufficiently allege either a formal or an informal

10   organizational structure amongst the named defendants.  The FAC merely alleges in conclusory

11   and unnecessarily fervid fashion that: defendants "held secret meetings . . . to discuss legislative

12   and litigation matters"; that "[e]ach Defendant has participated in the operation and management

13   of the Enterprise"; and that the group "reached to the highest of California's government

14   officials."  (*Id.* at 10, ¶¶ 49, 50; 50, ¶ 244.)  However, the FAC does not allege specific facts as to

15   the nature of the connection between defendants.  It also does not contain factual allegations

16   explaining the structure of the alleged enterprise, or explain how defendants coordinated to create

17   a vehicle with mechanisms for carrying out RICO predicate crimes.  *See Gomez, LLC*, 2015 WL

18   4270042, at *10 (listing cases that have dismissed RICO claims based on failure to allege an

19   enterprise's structure and organization).  Plaintiffs' allegations of political contributions and

20   private meetings are clearly insufficient to show an ongoing connection between named

21   defendants.  *Cf. Odom*, 486 F.3d at 552 (finding that plaintiff had pled an ongoing organization

22   when defendants allegedly entered into a cross-marketing contract and created mechanisms for

23   transferring the plaintiff's personal and financial information in exchange for money).

24          Neither do plaintiffs adequately allege that defendants coordinated their activities as a

25   continuing unit.  In the FAC, plaintiffs merely allege without any elaboration that defendants

26   engaged in a "continuing and related pattern of racketeering activity," which began "[a]s early as

27

28   [9]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

September 27, 2011, and continu[ed] up to and including the date of filing this complaint." (Doc. No. 16 at 50, ¶ 245.) The FAC does not plead facts showing that defendants acted jointly over a period of time, however, alleging only isolated incidents each involving some but not all of the named defendants. (Doc. No. 16 at 7, 9, 23, 25, 29, 31, 24, 38–40 ¶¶ 36–37, 44, 107–108, 115, 117, 121, 140–142, 150, 162, 188–198, 201–203.) Plaintiffs have thus failed to allege facts sufficient to meet the "continuing unit" requirement. *Odom*, 486 F.3d at 553; *see also Bryant v. Mattel*, 573 F. Supp. 2d 1254, 1263 (C.D. Cal. 2007) (indicating that the continuing unit requirement "is related to the duration of the racketeering activities," as well as to "the notion that RICO was not meant to address discrete instances of fraud or criminal conduct").

Ultimately, in light of plaintiffs' failure to allege a RICO enterprise with a common purpose, cohesive structure, and continuing operation, the court must conclude that the FAC does not "contain sufficient factual matter" to state a plausible claim to relief under RICO. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### ii.  Racketeering activity pattern

Defendants also argue that plaintiffs have failed to adequately plead a pattern of racketeering activity under RICO in the FAC.

The RICO statute defines "racketeering activity" as any act indictable under several provisions of Title 18 of the United States Code, including the predicate acts of wire fraud, § 1343, mail fraud, § 1341, and tampering with or retaliating against federal witnesses, §§ 1512, 1513. *See* 18 U.S.C. § 1961(1); *Sanford*, 625 F.3d at 557.

To make out a claim for the RICO predicate act of wire or mail fraud, plaintiffs must allege (i) a scheme or artifice devised with (ii) the specific intent to defraud and (iii) use of the United States mail or interstate telephone wires in furtherance thereof. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002). A mail or wire communication is in furtherance of a fraudulent scheme if it is "incident to the execution of the scheme," meaning that it "need not be an essential element of the scheme, just a step in the plot." *United States v. Garlick*, 240 F.3d 789, 795 (9th Cir. 2001) (citation omitted); *see also United States v. Lo*, 231 F.3d 471, 478 (9th Cir. 2000). Honest services fraud entails a scheme or artifice to deprive

1    another, by mail or wire, of the intangible right of honest services, and it covers only bribery and

2    kickback schemes.  *See United States v. Christensen*, 828 F.3d 763, 785 (9th Cir. 2015) (citing

3    *Skilling v. United States*, 561 U.S. 358, 368 (2010)); *cf. Portfolio Investments LLC v. First Sav.*

4    *Bank Northwest*, 583 Fed. Appx. 814, 816 (9th Cir. 2014)[10] (declining to reach the issue of

5    whether honest-services fraud can itself ever serve as a predicate RICO act).  A breach of a

6    fiduciary duty is an element of honest services fraud under 18 U.S.C. § 1346.  *See United States*

7    *v. Milovanovic*, 678 F.3d 713, 722 (9th Cir. 2012) (en banc).

8           As noted above, RICO fraud claims must meet the heightened pleading standards of

9    Federal Civil Procedure Rule 9(b).  *See generally Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097,

10   1103–04 (9th Cir. 2003).  In order to satisfy Rule 9(b), plaintiffs must allege "the time, place, and

11   specific content of the false representations as well as the identities of the parties to the

12   misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–1066 (9th Cir. 2004).

13   Plaintiffs must also allege facts setting "forth an explanation as to why the statement or omission

14   complained of was false and misleading." *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec.*

15   *Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as*

16   *stated in In re Silicon Graphics, Inc.*, 970 F. Supp. 746, 754 (N.D. Cal. 1997).  While plaintiffs

17   must plead the factual circumstances of fraud itself with particularity, they may allege specific

18   intent to defraud through general allegations.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,

19   1547 (9th Cir. 1994) (en banc) (concluding that "plaintiffs may aver scienter generally, just as the

20   rule states—that is, simply by saying that scienter existed").

21          To plead a pattern of racketeering activity, plaintiffs must allege that defendants

22   committed at least two of the statutorily enumerated predicate acts.[11]  18 U.S.C. § 1961(5);

23   *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (noting that, while at least two acts of

24   racketeering activity are required under RICO to establish a pattern, the pleading of two such acts

25   [10]  *See* n.9, above.

26   [11]  The RICO statute provides that a pattern "requires at least two acts of racketeering activity,

27   one of which occurred after the effective date of this chapter and the last of which occurred within
     ten years (excluding any period of imprisonment) after the commission of a prior act of

28   racketeering activity."  18 U.S.C. § 1961(5).

is not necessarily sufficient to do so).  Where RICO claims under § 1962(c) are asserted against

multiple defendants, a plaintiff must allege at least two predicate acts by each defendant.  *In re*

*Wellpoint, Inc. Out-Of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012);

*Zazzali v. Swenson*, No. 1:12-cv-224-EJL-MHW, 2013 WL 6095361, at *7 (D. Idaho Jan. 25,

2013); *see also United States v. Persico*, 832 F.2d 705, 721 (2d Cir. 1987); *cf. United States v.*

*Frega*, 179 F.3d 793, 810 (9th Cir. 1999) (noting that plaintiffs alleging a RICO conspiracy under

§ 1962(d) need not allege that each defendant agreed to participate personally in each predicate

act, and instead need only allege that each RICO conspirators agreed on the overall objective of

the conspiracy).  To plead a pattern of racketeering activity, plaintiffs must allege: (i) that the

racketeering predicates are related, and (ii) that they amount to or pose a threat of continued

criminal activity.  *Turner*, 362 F.3d at 1229 (citations omitted).  The relatedness requirement is

satisfied if the plaintiffs allege criminal acts with the same or similar purposes, results,

participants, victims, or methods of commission, or acts that are otherwise interrelated by

distinguishing characteristics and are not isolated events.  *Howard v. America Online Inc.*, 208

F.3d 741, 749 (9th Cir. 2000).  The continuity requirement is satisfied if plaintiffs allege "either a

series of related predicates extending over a substantial period of time, i.e., closed-ended

continuity, or past conduct that by its nature projects into the future with a threat of repetition,

i.e., open-ended continuity."  *Id.* at 750; *see also H.J., Inc. v. Northwestern Bell Tel. Co.*, 492

U.S. 229, 241–42 (1989).

 In their motions to dismiss, defendants collectively argue that plaintiffs have failed to

adequately plead a RICO predicate offense or a pattern of such offenses.  First, defendants argue

that none of the seven RICO predicates alleged by plaintiffs are sufficient to state a claim, as they

are either not listed in the RICO statute or are not supported by specific, concrete factual

allegations in the FAC.  (Doc. Nos. 51 at 28–31; 55 at 28–30; 57 at 29–31; 59-1 at 19–24; 63-1 at

15–16.)  Second, defendants CIPA, Oviatt, Chevron, argue that plaintiffs have not adequately

alleged a pattern of racketeering activity, as they have failed to plausibly allege two predicate acts

carried out by defendants.  (Doc. Nos. 55 at 29; 57 at 29; 59-1 at 23; 63-1 at 15–16.)  Defendant

Chevron emphasizes that even if plaintiffs were to be found to have successfully alleged two

1    predicate acts under RICO, they have failed to plead that any of the alleged predicate acts are

2    related and spring from a similar purpose.  (Doc. No. 59-1 at 23–24.)

3            In opposing defendants' motions to dismiss, plaintiffs argue that their FAC alleges a

4    plausible pattern of racketeering activity.  In their written submissions, plaintiffs argue that the

5    FAC adequately pleads RICO predicate acts of mail and wire fraud, 18 U.S.C. §§ 1341 and 1343,

6    as required under Rule 9(b).  (Doc. No. 71 at 19–21.)  At oral argument on the pending motion,

7    plaintiffs also maintained that the FAC sufficiently alleges the predicate acts of witness

8    tampering, 18 U.S.C. §§ 1512–13, and honest services fraud, 18 U.S.C. § 1346.  (Doc. No. 165 at

9    35.)  Finally, plaintiffs argue the FAC sufficiently pleads a pattern of racketeering activity under

10   RICO, in that it "alleges government fraud that took place over a four year period and multiple

11   episodes."  (Doc. No. 71 at 22–23.)

12           Plaintiffs' FAC alleges seven distinct RICO predicates—conspiracy against rights, 18

13   U.S.C. § 241; conspiracy to defraud the United States, 18 U.S.C. § 371; tampering with or

14   retaliating against witnesses, 18 U.S.C. §§ 1512–13; honest services fraud, 18 U.S.C. § 1346;

15   mail and wire fraud, 18 U.S.C. § 1341 and § 1343.  (Doc. No. 16 at 49.)  As noted by defendants,

16   however, two of the statutory offenses alleged by plaintiffs, conspiracy against rights and

17   conspiracy to defraud the United States, 18 U.S.C. §§ 241 or 371, are not listed as predicate acts

18   under the RICO statue.  *See* 18 U.S.C. § 1961(1); *see also Rector v. Baca*, 2014 WL 4244345 at

19   *10 n.14 (C.D. Cal., Aug. 25, 2014).  The allegation of these two statutory offenses cannot satisfy

20   the predicate acts requirement with respect to plaintiffs' RICO claim.

21           Plaintiffs have also failed to adequately allege predicate acts based on federal witness

22   tampering, 18 U.S.C. §§ 1512–13.  The FAC does not allege any facts concerning what persons

23   or entities were involved in the alleged witness tampering offenses or facts indicating when or

24   how any acts of tampering or retaliation took place.  Indeed, the FAC fails to allege even the

25   existence of any relevant court proceedings.  Given the complete absence of supporting factual

26   allegations, plaintiffs cannot be said to have plausibly alleged predicate offenses based on

27   violations of 18 U.S.C. §§ 1512–13.  *See Vierra v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219,

28   1235 (E.D. Cal. 2009).

Plaintiffs similarly fail to allege a predicate offense of honest services fraud under 18 U.S.C. § 1346.  To support their honest services fraud claim, plaintiffs merely allege the following: (i) that defendants Occidental and Chevron made political contributions to Governor Brown in 2012, to support campaign programs and tax increase propositions, (Doc. No. 16 at 33, ¶¶ 154–55); (ii) that defendant WSPA took state legislators to dinner in September 2013, (*Id.*at 40, ¶¶ 198–99); and (iii) that defendants Occidental, CDC, and Chevron took defendant Kustic to dinner in November 2013, (*Id.* at 40, ¶ 201).  Plaintiffs do not allege facts in any way suggesting that defendants accepted money or benefits in exchange for official action.  Nor do plaintiffs allege facts indicating that defendants otherwise retained monetary sums received from a third party.  Without specific factual allegations supporting claims of bribery or kickbacks, plaintiffs cannot allege a predicate offense of honest services fraud.  *See generally Christensen*, 828 F.3d at 785 (explaining that under the Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358 (2010), honest services fraud is now limited to fraudulent schemes involving bribes or kickbacks supplied by a third party who had not been deceived); *United States v. Renzi*, No. CR 08-212TUC DCB (BPV), 2012 WL 983580, at *4 (D. Ariz. Mar. 22, 2012) (explaining the nature of bribes and kickbacks).[12]

Finally, plaintiffs have not adequately pled the predicate acts of mail or wire fraud. Plaintiffs allege only the following in support of their mail and wire fraud claims: (i) defendants Governor Brown, Nechodom, Kustic, and Oviatt "utilize[ed] mail and wire fraud to deprive

---

[12]  Defendants Occidental, CRC, and Oviatt argue that honest services fraud cannot serve as an independent predicate offense under RICO, separate from the related predicate acts of wire and mail fraud.  (Doc. Nos. 51 at 29; 57 at 29).  However, contrary to defendants' arguments, the Ninth Circuit has not clearly stated this proposition.  *See Portfolio Investments LLC v. First Sav. Bank Northwest*, 583 Fed. Appx. 814, 816 (9th Cir. 2014) (finding that plaintiff lacked standing to bring RICO claims, and specifically declining to reach the issue of whether honest-services fraud can ever serve as a predicate RICO act).  *But see United States v. Boscarino*, 437 F.3d 634 (7th Cir. 2006) (stating that honest services fraud under 18 U.S.C. § 1346 "does not create a separate crime," and is a "definitional clause" describing a type of mail fraud under 18 U.S.C. § 1341); *Kolar v. Preferred Real Estate Investments, Inc.*, No. 08-3119, 361 Fed. Appx. 354, 364 n.10 (3d Cir. 2010) (describing honest services fraud under 18 U.S.C. § 1346 as "fall[ing] within the reach of the mail and wire fraud provisions").  Having found that plaintiff does not plead sufficient facts supporting a violation of 18 U.S.C. § 1346, this court need not reach the issue of whether honest services fraud can be a separate RICO predicate offense.

1  Californians of compliance with the [SDWA]"; (ii) defendant Governor Brown used wire

2  communications to threaten, and eventually fire, CDC official Derek Chernow and DOGGR

3  official Elena Miller based on their refusal to violate the SDWA; (iii) defendant Oviatt sent wire

4  communications "threatening witnesses and obstructing the right of farmers to petition the

5  courts"; (iv) defendant Kustic sent wire communications "promising to be 'flexible' in permitting

6  wells"; (v) defendants Chevron, Occidental, and CRC "sent fraudulent communications via mail

7  and electronic wires . . . suggesting that [DOGGR official] Miller was imposing new regulations,"

8  "suggesting they complied with regulations designed to protect fresh water," and "tout[ing] the

9  safety of fracking"; and (vi) defendants WSPA and CIPA used electronic wires to misrepresent

10 that there were "unnecessary delays in Sacramento's review of oil field injection projects," and

11 mailed "fraudulent letters suggesting that failing to issue [well-drilling] permits cost the people in

12 California jobs."  (*Id.* at 27, 43, 48, ¶¶ 125–128, 211–215, 238.)

13         In order to adequately allege claims of mail or wire fraud, however, plaintiffs must satisfy

14 the requirements of Federal Civil Procedure Rule 9(b).  *See United States ex rel. Lee v.*

15 *SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (finding that a complaint failed to

16 satisfy Rule 9(b) where it was not "specific enough to give defendants notice of the particular

17 misconduct which is alleged to constitute the fraud charged so that they can defend against the

18 charge and not just deny that they have done anything wrong.").  Here, the factual allegations of

19 plaintiffs' FAC are lacking in specific detail, however.  The FAC does not allege facts explaining

20 how any of defendants' claimed communications involved a misrepresentation, or how any

21 innocuous communications were an essential part of a scheme to defraud.  *See generally*

22 *Sebastian Intern., Inc. v. Russolillo*, 128 F. Supp. 2d 630, 635–36 (C.D. Cal. 2001) (explaining

23 that plaintiffs in mail and wire fraud cases must either plead false statements, or innocuous

24 statements that are incident to an essential part of a scheme to defraud).  The FAC also does not

25 contain allegations clearly describing the role of each defendant in the alleged fraudulent scheme,

26 or explain who was a party to the allegedly fraudulent statements.  *See Sanford*, 625 F.3d at 558

27 (holding that to allege mail or wire fraud with particularity under Rule 9(b), plaintiffs must

28 identify the parties to alleged misrepresentations); *see also Moore v. Kayport Package Exp., Inc.*,

885 F.2d 531, 541 (9th Cir. 1989) (finding that plaintiffs had failed to allege mail fraud with particularity under Rule 9(b) because they "[did] not attribute specific conduct to individual defendants," or "specify either the time or the place of the alleged wrongful conduct"). Moreover, plaintiffs have not alleged that such factual details are exclusively in the defendants' possession, such that a more flexible application of Rule 9(b) is appropriate. *See United States ex rel. Lee*, 245 F.3d at 1052. Accordingly, the court concludes that plaintiffs have failed to adequately allege a predicate offense of mail or wire fraud under Federal Civil Procedure Rule 9(b).

Because plaintiffs have failed to sufficiently allege an instance of racketeering activity under RICO, plaintiffs have necessarily failed to sufficiently allege a pattern of such activity. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002). Thus, plaintiffs' RICO claims as pled fail for this reason as well.

### iii.   **RICO conspiracy**

Next, defendants argue that plaintiffs have failed to adequately allege a RICO conspiracy under 18 U.S.C. § 1962(d).

The RICO statute provides that "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). However, a plaintiff "cannot claim that a conspiracy to violate RICO exist[s] if they do not adequately plead a substantive violation of RICO." *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997) (stating that "if the section 1962(c) claim does not state an action upon which relief could ever be granted, regardless of the evidence, then the section 1962(d) claim cannot be entertained") (emphasis omitted).

In their motions to dismiss, defendants Occidental and CRC, CIPA, Oviatt, and Chevron argue that plaintiffs have failed to adequately plead a RICO conspiracy under § 1962(d) because they have not adequately alleged a substantive RICO claim. (Doc. Nos. 51 at 2; 55 at 27; 57 at 31–32; 59-1 at 26.) Plaintiffs oppose defendants' arguments, relying on the same factual allegations in the FAC which they point to in support of their substantive RICO claims. (Doc.

46

1   Nos. 73 at 16–17; 74 at 18–19; 75 at 16; 76 at 20–21; 77 at 29–32.)  For the reasons addressed

2   above, plaintiffs' argument in this regard falls short.

3       Because plaintiffs have failed to adequately allege a § 1962(c) RICO claim, they cannot

4   plausibly allege a RICO conspiracy under § 1962(d).  *See Howard*, 208 F.3d at 751.

5   Accordingly, defendants' motion to dismiss plaintiffs' §1962(d) claim will be granted.

6       **VII.**    **Civil Rights Claims**

7       Defendants also argue that plaintiffs' civil rights claims under 42 U.S.C. § 1983 and

8   § 1985 should be dismissed because plaintiffs have alleged neither a violation of their

9   constitutional rights cognizable under § 1983, nor a meeting of the minds in support of their

10  § 1985(3) claim.  The court will address each argument below.

11          **a.**   **Section 1983**

12      Defendants first contend that plaintiffs' § 1983 claims should be dismissed because

13  plaintiffs have not adequately pled a constitutional violation and also have not pled a private-

14  public conspiracy sufficient to support a § 1983 claim against non-state actor defendants.

15      The Civil Rights Act provides as follows:

16          Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the
17          deprivation of any rights, privileges, or immunities secured by the
            Constitution . . . shall be liable to the party injured in an action at
18          law, suit in equity, or other proper proceeding for redress.

19  42 U.S.C. § 1983.  Thus, to make out a cognizable claim under § 1983, a plaintiff must allege

20  facts showing that: (i) the conduct complained of was committed by a person acting under color

21  of state law; (ii) this conduct deprived a person of constitutional rights, and (iii) there is an actual

22  connection or link between the actions of the defendants and the deprivation allegedly suffered by

23  plaintiff.  *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Monell v. Department of Social Servs.*,

24  436 U.S. 658, 690–695 (1978); *Rizzo v. Goode*, 423 U.S. 362, 370–371 (1976).

25      The first element of a § 1983 claim limits liability to persons who are acting under color

26  state law.  Neither a state nor its officials acting in their official capacities are considered

27  "persons" for purposes of § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71

28  (1989)); *Thornton v. Brown*, 757 F.3d 834, 839 (9th Cir. 2013) (noting that state officials may

1   nonetheless be sued in their official capacities for prospective injunctive relief under § 1983); *see*

2   *also Sykes v. State of Cal. (Dep't of Motor Vehicles)*, 497 F.2d 197, 202 (9th Cir. 1974) (noting

3   that private persons cannot be held liable for a § 1983 conspiracy if their co-conspirators are state

4   officials immune from suit).  However, under certain circumstances a private person can in act

5   "under color of" state law and be subject to § 1983 liability.  *See Tsao v. Desert Palace, Inc.*, 698

6   F.3d 1128, 1139 (9th Cir. 2012) (quotation omitted); *see also Flagg Bros., Inc. v. Brooks*, 436

7   U.S. 149, 155 (1978).  "The Supreme Court has articulated four tests for determining whether a

8   private [party's] actions amount to state action: (1) the public function test; (2) the joint action

9   test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao*, 698 F.3d at 1140

10  (quoting *Franklin v. Fox*, 312 F.3d 423, 444–45 (9th Cir. 2002)).[13]

11          The third element of a § 1983 claim requires an actual connection or link between

12  defendants' actions and plaintiffs' alleged deprivation.  "A person 'subjects' another to the

13  deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act,

14  participates in another's affirmative acts or omits to perform an act which he is legally required to

15  do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743

16  (9th Cir. 1978); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (stating that

17  "[l]iability under section 1983 arises only upon a showing of personal participation by the

18  defendant").

19  ───────────────────

20  [13]  The joint action test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin*, 312 F.3d at 445 (9th Cir.

21  2002).  This requirement can be satisfied by alleging facts demonstrating the existence of a conspiracy between a private party and the government.  *Crowe v. County of San Diego*, 608 F.3d

22  406, 440 (9th Cir. 2010).  To plead a conspiracy, a plaintiff must allege the existence of "an agreement or meeting of the minds" with a state actor to violate his constitutional rights.  *Crowe*,

23  608 F.3d at 440; *Margolis v. Rya*n, 140 F.3d 850, 853 (9th Cir. 1998).  The agreement need not

24  be overt, and may be inferred on the basis of circumstantial evidence, such as if conspirators have committed acts that are "unlikely to have been undertaken without an agreement." *Mendocino*

25  *Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).  Each of the defendants need not know the exact details of the plan, but every defendant must share the conspiracy's

26  common objective.  *Id.* (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d

27  1539, 1541 (9th Cir. 1989)); *see also Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1114 (C.D. Cal. 2006) (finding that a private party's "mere acquiescence to the unconstitutional

28  demands of a state actor is insufficient").

1        With respect to the second element, the FAC alleges that plaintiffs were deprived of their

2   First Amendment petitioning rights and Fifth Amendment rights under the Takings Clause.  The

3   First Amendment[14] protects the right of private citizens to petition government departments.  *See*

4   *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972).  The

5   protections afforded by the Petition Clause have been limited by the Supreme Court to situations

6   implicating an individual's associational or speech interests.  *See McDonald v. Smith*, 472 U.S.

7   479, 482–85 (1985); *WMX Technologies, Inc. v. Mille*r, 197 F.3d 367, 372 (9th Cir. 1999).

8   However, the Petition Clause "does not impose any affirmative obligation on the government to

9   listen, to respond to or . . . to recognize" grievances.  *Smith v. Ark. State Highway Emps., Local*,

10   441 U.S. 463, 465 (1979); *see also Minnesota State Bd. for Community Colleges v. Knight*, 465

11   U.S. 271, 283 (1984) (observing that "the Constitution does not grant to members of the public

12   generally a right to be heard by public bodies making decisions of policy").  Thus, "[t]here is no

13   constitutional right to have access to particular government information, or to require openness

14   from the bureaucracy." *Houchins v. KQED*, 438 U.S. 1, 14 (1978); *see also L.A. Police Dep't v.

15   United Reporting Publ'g Corp.*, 528 U.S. 32, 40 (1999) (stating that the First Amendment does

16   not provide a general right to information in the government's possession).

17        The Fifth Amendment Takings Clause[15] guarantees that private property shall not be taken

18   for a public use without just compensation.  *See* U.S. Const. amend. V; *see generally Penn*

19   *Central Transp. Co. v. N.Y.C.*, 438 U.S. 104 (1978) (discussing the factors shaping the

20   jurisprudence of the Fifth Amendment).  "The Fifth Amendment does not proscribe the taking of

21   property; it proscribes taking without just compensation." *Williamson Cty. Reg'l Planning*

22   *Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985).  A takings claim is generally not ripe for

23   adjudication in federal court until all state administrative and judicial procedures for seeking just

24   compensation have been exhausted, or unless plaintiffs can demonstrate that such state remedies

---

25   26  [14]  The First Amendment provides: "Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Cons. amend. I.

27   28  [15]  The Fifth Amendment provides: "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.

1   are unavailable or inadequate.  *Id.*; *see also Colony Cove Props., LLC v. City of Carson*, 640 F.3d

2   948, 957–58 (9th Cir. 2011); *Carson Harbor Village, Ltd. V. City of Carson*, 353 F.3d 824, 827

3   (9th Cir. 2004).  Moreover, the Ninth Circuit has found that "California's inverse condemnation

4   procedures are adequate to address a regulatory takings claim."  *Carson Harbor Village Ltd.*, 353

5   F.3d at 828.

6          In their motions to dismiss, defendants collectively assert three reasons why plaintiffs

7   have failed to state a cognizable § 1983 claim in their FAC.  First, defendants CIPA and DOGGR

8   argue that plaintiffs cannot bring § 1983 claims against defendants DOGGR, Governor Brown,

9   and Oviatt in their official capacities, because government officials are not "persons" for purposes

10  of § 1983, and are not subject to suit in their official capacities under that provision.  (Doc. Nos.

11  55 at 24; 64-1 at 15 n.2.)  Second, defendants Occidental and CRC, CIPA, Chevron, and WSPA

12  argue that plaintiffs cannot maintain a § 1983 action against defendants Occidental and CRC,

13  Chevron, WSPA, or CIPA, because plaintiffs have failed to sufficiently alleged a private-public

14  conspiracy such that the conduct of the private parties named could be found to constitute state

15  action.  (Doc. No. 51 at 32–33; 55 at 25; 59-1 at 29; 63-1 at 17–18.)  Third, defendants argue that

16  plaintiffs have failed to adequately plead violation of either the First Amendment Petition Clause

17  or the Fifth Amendment Takings Clause.  (Doc. Nos. 51 at 33–34; 55 at 32–34; 57 at 33–34; 59-1

18  at 30–32; 64-1 at 24–25.)  Specifically, defendants contend that plaintiffs have failed to plead

19  facts alleging a violation of their constitutional rights or their exhaustion of state remedies as

20  required to state a claim under the Fifth Amendment Takings Clause.  (Doc. Nos. 51 at 34; 55 at

21  32–34; 57 at 33–35; 59-1 at 30–32 & n.6; 63-1 at 18–19; 64-1 at 23–25.)

22          Plaintiffs oppose defendants' motions to dismiss in this regard, arguing that the FAC

23  adequately states a claim under § 1983.  Plaintiffs do not respond to defendants' arguments that

24  they cannot bring § 1983 claims against defendants DOGGR, Governor Brown, and Oviatt in

25  their official capacities.  (Doc. No. 75.)  However, plaintiffs argue that they have properly

26  brought claims against private actor defendants, in that their FAC adequately alleges a § 1983

27  conspiracy between private and public defendants.  (Doc. No. 71 at 30.)  Additionally, plaintiffs

28  argue that they have sufficiently alleged violations of both the First Amendment Petition Clause

1    and the Fifth Amendment Takings Clause.  (Doc. No. 71 at 30.)  Finally, with respect to the Fifth

2    Amendment claim, plaintiffs contend that an inverse condemnation action may be brought

3    without pleading exhaustion of state remedies if property has already been damaged.  (Doc. No.

4    71 at 30–31.)

5          Because neither a state nor its officials acting in their official capacities are considered

6    "persons" for purposes of § 1983, plaintiffs cannot assert official capacity claims against

7    government defendants Governor Brown, Nechodom, Kustic, and Oviatt.  *See Will v. Michigan*

8    *Dep't of State Police*, 491 U.S. 58, 71 (1989)); *Thornton v. Brown*, 757 F.3d 834, 839 (9th Cir.

9    2013) (noting that neither a state nor its officials acting in their official capacities are "persons"

10   for the purposes of § 1983).

11         Furthermore, plaintiffs have failed to allege that private defendants Occidental and CRC,

12   CIPA, Chevron, and WSPA acted "under color of state law" such that they are properly subject to

13   suit under § 1983.  As addressed above, a private party acts under color of state law only if they

14   conspire with state officials to carry out a constitutional violation.  *Tsao*, 698 F.3d at 1139–40;

15   *Franklin*, 312 F.3d at 445 (9th Cir. 2002).  However, here, plaintiffs allege only that the

16   defendant oil companies contributed to defendant Governor Brown, held meetings with the trade

17   association defendants and unnamed DOGGR officials, and communicated with state actors.

18   (Doc. No. 16 at 10–11, 33, 38–40, ¶¶ 50–51, 154–155, 185–198, 201, 203, 207, 231.)  These

19   allegations are completely innocuous and in no way suggest acts by the defendants "unlikely to

20   have been undertaken without an agreement."  *See Mendocino Envtl. Ctr.*, 192 F.3d at 1301.

21   Plaintiffs simply have not alleged sufficient facts to suggest that defendants acted by a unified,

22   concerted action to violate plaintiffs' First or Fifth Amendment rights.

23         The court also finds that plaintiffs have failed to adequately plead violations of the First or

24   Fifth Amendment.  In support of their claim of a First Amendment violation, the FAC alleges in

25   conclusory fashion that plaintiffs were (i) "block[ed] . . . from complaining about contamination

26   of water" and "from expressing concerns about water quality"; and (ii) denied their right to "free

27   access to information under California Public Records Act, the Bagley-Keene Act, and the Brown

28   Act."  (*Id.* at 52, ¶ 256.)  However, plaintiffs have failed to plead facts indicating how they were

51

1    blocked from expressing concerns to government officials.  Plaintiffs also have not provided

2    sufficient factual allegations that, if proven, would demonstrate that they were unconstitutionally

3    denied access to information.  *See, e.g.*, *Houchins v. KQED, INC.*, 438 U.S. 1, 15 (1978) (finding

4    that "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to

5    government information or sources of information within the government's control").  And while

6    plaintiffs suggest that defendant's actions violated state laws, violations of state law do not alone

7    support liability under § 1983.  *See Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998) ("As a

8    general rule, a violation of state law does not lead to liability under § 1983."); *see also Doe v.*

9    *Connecticut Dept. Of Child & Youth Services*, 911 F.2d 868, 869 (2d Cir. 1990) ("A violation of

10   state law neither gives plaintiffs a § 1983 claim nor deprives defendants of the defense of

11   qualified immunity to a proper § 1983 claim.").  Thus, construing the allegations of the FAC in

12   the light most favorable to the plaintiff, the court must nonetheless conclude that plaintiffs have

13   failed to allege sufficient facts to state a facially plausible § 1983 claim based on any claimed

14   violation of the First Amendment.

15        Plaintiffs have also fail to adequately plead a § 1983 claim based on a violation of the

16   Fifth Amendment.  In the FAC, plaintiffs allege they were deprived of their "constitutional right

17   to own property under the Fifth Amendment."  (Doc. No. 16 at 51, ¶ 249.)  Plaintiffs contend that

18   the DOGGR's policy of improperly allowing well-drilling permits "constitutes a regulatory taking

19   because such contamination diminishes the value of the farms."  (*Id.* at 51, ¶ 257.)  Plaintiffs do

20   not allege, however, that they sought and were denied just compensation for any alleged property

21   deprivation through state inverse condemnation procedures before bringing their § 1983 Takings

22   Clause claim.  *See Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 957–58 (9th Cir.

23   2011) (affirming dismissal of a takings claim due to plaintiffs failure to pursue state adjustment

24   procedure prior to filing suit in federal court).  While plaintiffs argue that exhaustion of state

25   remedies is not a prerequisite to an inverse condemnation action, the argument is unpersuasive

26   since here plaintiffs are pursuing a Fifth Amendment claim brought under § 1983 and not a state

27   law-based inverse condemnation action.  Plaintiffs' failure to allege exhaustion of their

28   administrative remedies is fatal to any attempt to bring a cognizable claim under the Fifth

1   Amendment pursuant to § 1983.  *Id.*; *see also Joe Hemp's First Hemp Bank v. City of Oakland*,

2   No. C. 15-05-053 WHA, 2016 WL 375082, at*4 (N.D. Cal. Feb. 1, 2016) ("Plaintiffs cannot state

3   a claim premised on failure to pay just compensation before exhausting the procedures for such

4   compensation available under State law.").

5         **b.  <u>Section 1985 Claim</u>**

6       Title 42 U.S.C. § 1985(3) provides:

7   > [i]f two or more persons in any State or Territory conspire ..., for
8   > the purpose of depriving, either directly or indirectly, any person or
9   > class of persons of the equal protection of the laws, or of equal
10  > privileges and immunities under the laws ... whereby another is
11  > injured in his person or property, or deprived of having and
      > exercising any right or privilege of a citizen of the United States,
      > the party so injured or deprived may have an action for the recovery
      > of damages occasioned by such injury or deprivation, against any
      > one or more of the conspirators.

12  To state a cause of action under § 1985(3), plaintiffs must allege and prove four elements: (i) a

13  conspiracy; (ii) for the purpose of depriving, either directly or indirectly, any person or class of

14  persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

15  and (iii) an act in furtherance of this conspiracy; (iv) whereby a person is either injured in his

16  person or property or deprived of any right or privilege of a citizen of the United States.  *Sever v.*

17  *Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citing *United States Brotherhood of*

18  *Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828–29 (1983)); *see also Scott v. Ross*,

19  140 F.3d 1275, 1284 (9th Cir. 1998); *Dixie v. Virga*, No. 2:12-cv-2626-MCE-DAD, 2015 WL

20  412298, at *10 (E.D. Cal. Jan. 30, 2015).

21      To plead a deprivation of equal protection, the second element of a § 1985 claim, a

22  plaintiff must allege "a deprivation of [a] right motivated by some racial, or . . . other[] class-

23  based" animus.  *Sever*, 978 F.2d at 1536.  The Ninth Circuit has held that "Section 1985(3) is

24  extended beyond race 'only when the class in question can show that there has been a

25  governmental determination that its members require and warrant special federal assistance in

26  protecting their civil rights.'"  *Id.* at 1537.  In particular, "the courts [must] have designated the

27  class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that

28  Congress has indicated through legislation that the class required special protection."  *Id.*  Finally,

1  as recognized by the Supreme Court in *United Brotherhood of Carpenters and Joiners v. Scott*,

2  463 U.S. 825 (1983), § 1985(3) does not "reach conspiracies motivated by economic or

3  commercial animus." *Id.* at 838.

4       Defendants move to dismiss this cause of action, contending that plaintiffs have failed to

5  adequately plead their § 1985 claim.  Defendants make two persuasive arguments.  First,

6  defendants Occidental and CRC, Chevron, and DOGGR argue that plaintiffs have failed to allege

7  either a § 1983 deprivation of rights or a § 1983 conspiracy, and are thus precluded from bringing

8  a claim under § 1985.  (Doc. Nos. 51 at 32–34; 59-1 at 32–33; 64-1 at 25.)  Second, defendants

9  Occidental and CRC, Oviatt, Chevron, WSPA, and DOGGR argue that plaintiffs have not alleged

10  that any deprivation of rights they allege was motivated by a racial or class based animus since

11  farmers are not a protected class under § 1985(3).  (Doc. Nos. 51 at 31–32; 57 at 35; 59-1 at 33;

12  63-1 at 16–17; 64-1 at 25.)

13       In their opposition to defendants' motion to dismiss, plaintiffs do not directly address the

14  sufficiency of their § 1985(3) claim.  (Doc. Nos. 71, 73–77.)[16]

15       The court now finds that plaintiffs' § 1985(3) claim is inadequately pled.  Since the court

16  has already found that plaintiffs have not adequately alleged a conspiracy or a violation of

17  constitutional rights, plaintiffs are necessarily barred from pursuing a claim under § 1985.  *See*

18  *supra*, Section VI(a); *see also Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 523–24 (9th

19  Cir. 1994) (affirming dismissal of § 1985(3) claim because plaintiff failed to allege "a violation of

20  his constitutional rights of free speech and due process"); *Caldeira v. County of Kauai*, 866 F.2d

21  1175, 1182 (9th Cir. 1989) (finding that "the absence of a section 1983 deprivation of rights

22  precludes a section 1985 conspiracy claim predicated on the same allegations").  Moreover,

23  plaintiffs do not allege that defendants acted with the requisite racial or class-based animus.

24  Rather, in their FAC, plaintiffs allege only that "[u]nder 42 U.S.C. section 1985(3)," defendants

25  are liable for "a conspiracy to violate the constitutional rights of [] farmers."  (Doc. No. 16 at 52,

26  ¶ 258.)  However, the FAC contains no allegations indicating that defendants acted out of any

27

28  [16]  Indeed, at the hearing on the pending motion, plaintiffs' counsel conceded that the § 1985(3) claim "is something that we are not fighting to keep in the lawsuit."  (Doc. No. 165 at 34.)

1    invidiously discriminatory, racial, or class-based animus.  Plaintiffs' § 1985(3) claim thus fails for

2    this additional reason.  *See Caldeira*, 866 F.2d at 1182 (affirming dismissal of a § 1985(3) claim

3    because plaintiff "never alleges any invidiously discriminatory, racial or class-based animus");

4    *see also Gould v. County of Mendocino*, No. C 00-1206 SI, 2000 WL 1346787, at *6 (N.D. Cal.

5    Sept. 6, 2000).[17]

6    **VIII.   Leave to Amend**

7            Although currently proceeding on a first amended complaint, plaintiffs have requested

8    that they be granted further leave to amend in the event that the court grants defendants' motions

9    to dismiss.  (Doc. No. 73 at 10.)[18]  Defendants have argued that given the nature of the

10   deficiencies, dismissal should now be with prejudice.

11           The court has carefully considered whether plaintiffs are capable of further amending their

12   FAC to state any cognizable claims for relief.  A district court should provide leave to amend

13   upon granting a motion to dismiss unless it is clear that the complaint could not be saved by any

14   amendment.  *See Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012) (citing *Manzarek v. St.*

15   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "Valid reasons for denying

16   leave to amend include undue delay, bad faith, prejudice, and futility."  *California Architectural*

17   *Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1988); *see also Chinatown*

18   *Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (leave to amend is properly

19   denied if the proposed amendment lacks merit or would be futile in saving plaintiff's suit);

20   *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983)

21   /////

22

23   [17]  Defendants also argue that the claims brought by plaintiffs Hopkins and Wedel are barred due
     to failure to join necessary parties, and that plaintiff Hopkins' claims are time barred.  Because

24   the court has already found that the claims brought by plaintiffs Hopkins and Wedel fail on a
     number of other grounds, the court need not reach defendants' additional arguments for dismissal

25   of those claims at this time.

26   [18]  Although the operative pleading before the court is the FAC, it was filed by plaintiffs as a

27   matter of right, prior to the appearance of any defendant in this action.  (Doc. No. 16.)  Therefore,
     this is the first order issued in this action in response to a motion to dismiss brought on behalf of a

28   defendant.

1    (holding that while leave to amend shall be freely given, the court does not have to allow futile

2    amendments).

3          Applying these standards, the court denies leave to amend with respect to the plaintiff

4    Committee's claims for monetary relief, as amendment of the complaint in that regard would be

5    futile for the reasons discussed in this order.  Leave to amend is also denied with respect to

6    plaintiffs' claims under RICO for injunctive relief.  Finally, the court denies leave to amend with

7    respect to all of plaintiffs' claims found by the court to be barred by Eleventh Amendment

8    immunity, including: all claims against defendant DOGGR, official capacity claims for monetary

9    relief against defendants Governor Brown, Kustic, Nechodom and Oviatt, and claims for

10   injunctive relief against defendants Governor Brown and Kustic.

11         Although concerned that it may well be the case, the court cannot yet say it is clear that

12   plaintiffs' remaining claims are not salvageable by amendment.[19]  Accordingly, and out of an

13   abundance of caution, the court will grant plaintiffs leave to amend with respect to their § 1983

14   and RICO claims against the individual government defendants.  Specifically, the court dismisses

15   without prejudice plaintiffs' claims for monetary damages against defendants Governor Brown,

16   Kustic, Nechodom, and Oviatt in their personal capacities, as well as plaintiffs' claims for

17   injunctive relief against defendant Nechodom.  Similarly, the court will grant leave to amend with

18   respect to plaintiffs' claims against defendants Occidental and CRC, Chevron, WSPA, and CIPA.

19   *See, e.g.*, *Electronics for Imaging, Inc. v. Coyle*, No. C 01-4853MJJ, C 05-0619 MJJ, 2005 WL

20   1661958, at *5–6 (N.D. Cal. July 14, 2005) (dismissing claims under *Noerr-Pennington* with

21   leave to amend); *Hack v. City of Carson City*, No. 3:11–cv–00353–RAM, 2012 WL 3638767, at

22   *12 (D. Nev. Aug. 22, 2012) (dismissing claims on *Noerr-Pennington* grounds, but granting leave

23

24   ───────────────────────
     [19]  The court acknowledges the arguments of all defendants, and particularly that made on behalf
25   of defendant Oviatt, that dismissal should be with prejudice because plaintiffs cannot allege facts
     supporting any cognizable claims against them.  As noted, that may be the case.  However, the
26   defendants' arguments for dismissal without leave to amend are essentially based upon the
     premise that because they did nothing actionable, amendment cannot cure the FAC's deficiencies.
27   That is a presumption that the court is simply not able to engage in at this point, particularly in
     light of the assurances of plaintiffs' counsel that additional factual allegations can in good faith be
28   made by plaintiffs in support of some of their claims.

1   to amend because "[i]t is not clear that Plaintiff could not *possibly* cure the deficiencies in his

2   Complaint through the allegation of other facts").

3        The court cannot refer to a prior pleading in order to make plaintiff's second amended

4   complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself

5   without reference to any prior pleading.  This is because, as a general rule, an amended complaint

6   supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once an

7   amended complaint is filed, the original pleading no longer serves any function in the case.

8   Therefore, in an amended complaint, as in an original complaint, each claim and the involvement

9   of each defendant must be sufficiently alleged.

10        Finally, as expressed at the hearing on these motions, the court is concerned regarding the

11   unnecessary and inflammatory rhetoric employed in the allegations of the FAC that is now being

12   dismissed.  Plaintiffs' counsel is advised that such a pleading style is not consistent with Rule 8's

13   requirement of "a short and plain statement of the claim showing that the pleader is entitled to

14   relief," hampers the court's ability to assess the sufficiency of the allegations, and should not be

15   included in any second amended complaint plaintiffs may elect to file.  *See Newton v. Gates*, No.

16   1:08-cv-2321-WSD, 2009 WL 541373, at *1, n.5 (N.D. Ga. Mar. 4, 2009) (apprising plaintiff's

17   counsel of Rule 8's requirements and warning that the court would not consider plaintiff's

18   "improper statements and rhetoric" appearing in his complaint); *see also Pigford v. Veneman*, 215

19   F.R.D. 2, 4–5 (D. D.C. 2003) (recognizing that Rule 12(f) provides the court with liberal

20   discretion to strike any matter that is "redundant, immaterial, impertinent, or scandalous" and

21   granting a motion to strike plaintiffs' court filings as scandalous) (and authorities cited therein).

22                              CONCLUSION

23        For all of the reasons set forth above, the court grants defendants' motions to dismiss

24   (Doc. Nos. 51, 55, 57, 59, 63 and 64.).  Specifically:

25   1.   Plaintiff Committee's claims for monetary relief are dismissed with prejudice and without

26        leave to amend;

27   2.   Plaintiffs' claims against defendant DOGGR are dismissed with prejudice and without

28        leave to amend.

57

3. Plaintiffs' RICO claims for injunctive relief are dismissed with prejudice and without leave to amend.

4. Plaintiffs' claims for monetary relief against defendants Governor Brown, Kustic, Nechodom, and Oviatt in their official capacity are dismissed with prejudice and without leave to amend.

5. Plaintiffs' claims for injunctive relief against defendants Governor Brown and Kustic are dismissed with prejudice and without leave to amend.

6. Plaintiffs' claim for injunctive relief against defendant Nechodom is dismissed with leave to amend.

7. Plaintiffs' claims for monetary relief against defendants Governor Brown, Kustic, Nechodom, and Oviatt in their personal capacity are dismissed with leave to amend.

8. Plaintiffs' RICO and § 1983 claims against defendants Occidental and CRC, Chevron, WSPA, and CIPA are dismissed with leave to amend.

9. Plaintiffs are granted twenty-one days from the issuance of this order in which to file a second amended complaint.  Any failure to do so will result in the dismissal of this action.

IT IS SO ORDERED.

Dated:   **January 20, 2017**

_____
UNITED STATES DISTRICT JUDGE